Attorney Grievance Comm'n v. Darryl Russel Armstrong, Misc. Docket AG No. 35, September Term, 2019

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT –** Court of Appeals disbarred lawyer who, among other misconduct, failed to take necessary and fundamental steps in cases, failed to respond to discovery, failed to appear at pre-trial conferences and hearings on behalf of clients, appeared at proceedings unprepared, abandoned representation of clients, failed to sufficiently and timely communicate with clients, failed to remit funds from clients' settlements to pay outstanding medical bills, failed to deposit and maintain client and third-party funds in attorney trust account, failed to consult with clients or provide updates, charged fees and provided little to no legal services, entered into contingency fee arrangement but failed to memorialize agreement in writing signed by client, failed to provide settlement disbursement sheet to client, provided inaccurate settlement disbursement sheets to clients, deposited trust funds into account other than attorney trust account without clients' informed consent, failed to promptly deliver settlement proceeds to clients and medical providers, failed to return unearned fees or to provide copies of files to clients, failed to respond to Attorney Grievance Commission's requests for information, threatened to "blow up" building in which physical therapy facility that had filed complaint against him was located, made false statement of material fact to third party, intentionally misappropriated settlement proceeds owed to clients or medical providers for own personal use and benefit, made misrepresentations to clients and third parties, and fraudulently altered two checks. Such conduct violated Maryland Attorneys' Rules of Professional Conduct ("MARPC") 1.1 (Competence), 1.2(a) (Scope of Representation), 1.3 (Diligence), 1.4 (Communication), 1.5(a) (Unreasonable Fees), 1.5(c) (Contingent Fees), 1.15(a), (c), and (d) (Safekeeping Property), 1.16(d) (Terminating Representation), 3.4(d) (Fairness to Opposing Party and Attorney), 4.1(a)(1) (False Statement to Third Person), 8.1(b) (Failing to Respond to Lawful Demand for Information), 8.4(b) (Criminal Act), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct that is Prejudicial to Administration of Justice), and 8.4(a) (Violating MARPC), and Md. Code. Ann., Bus. Occ. & Prof. (1989, 2010 Repl. Vol., 2017 Supp.) § 10-306 (Trust Money Restrictions).

Circuit Court for Baltimore City
Case No. 24-C-19-005273

Oral argument waived/submitted on papers

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 35

September Term, 2019

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

DARRYL RUSSEL ARMSTRONG

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by Watts, J.

_____

Filed: December 21, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

This attorney discipline proceeding involves an attorney who engaged in what can best be described as a one-man misconduct wave over the course of several years in connection with numerous client matters. The attorney, chief among various forms of serious misconduct, failed to competently and diligently represent his clients' interests, failed to sufficiently and timely communicate with his clients, failed to refund unearned legal fees to clients, misappropriated funds for his own personal use, fraudulently altered checks, made misrepresentations or outright lied to clients and third parties, and threatened to "blow up" a building in which a physical therapy facility, whose owner had filed a complaint on behalf of the facility against him, was located.

In this case, Darryl Russel Armstrong, Respondent, a member of the Bar of Maryland, represented eight clients in various civil and criminal matters and an immigration matter, and in addition represented several other clients who were injured in motor vehicle accidents and sought medical treatment at a physical therapy facility. Six clients, two clients' mothers, and the owner of the physical therapy facility filed complaints against Armstrong with Bar Counsel.

On September 27, 2019, on behalf of the Attorney Grievance Commission, Petitioner, Bar Counsel filed in this Court a "Petition for Disciplinary or Remedial Action" against Armstrong, charging Respondent with violating Maryland Attorneys' Rules of Professional Conduct ("MARPC") 1.1 (Competence), 1.2(a) (Scope of Representation), 1.3 (Diligence), 1.4 (Communication), 1.5(a) (Unreasonable Fees), 1.5(c) (Contingent Fees), 1.15(a), (c), and (d) (Safekeeping Property), 1.16(d) (Terminating Representation), 3.4(c) and (d) (Fairness to Opposing Party and Attorney), 4.1(a)(1) (False Statement to

Third Person), 8.1(b) (Failing to Respond to Lawful Demand for Information), 8.4(b) (Criminal Act), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct that is Prejudicial to the Administration of Justice), and 8.4(a) (Violating the MARPC), and Md. Code Ann., Bus. Occ. & Prof. (1989, 2010 Repl. Vol., 2017 Supp.) ("BOP") § 10-306 (Trust Money Restrictions).

On October 16, 2019, this Court designated the Honorable Robert K. Taylor, Jr. ("the hearing judge") of the Circuit Court for Baltimore City to hear this attorney discipline proceeding. On February 12, 2020, Armstrong was personally served with this Court's order, the petition, and a writ of summons. On March 6, 2020, Bar Counsel served Armstrong with a request for admissions of fact and genuineness of documents. Because Armstrong did not file an answer to the petition, on March 11, 2020, Bar Counsel filed a motion for an order of default. Armstrong did not file an opposition to the motion. On May 21, 2020, the hearing judge issued an order of default. On June 3, 2020, a notice of the order of default was mailed to Armstrong. Armstrong did not move to vacate the order of default.

On June 29, 2020, the hearing judge scheduled a remote hearing[1] for July 31, 2020, and a notice of the hearing date was mailed to Armstrong. On July 31, 2020, the hearing

---

[1]On March 13, 2020, the Chief Judge of this Court issued an Administrative Order closing the courts to the public due to the COVID-19 emergency and designating certain mandatory matters to continue to be scheduled and heard either in person or remotely. Pursuant to an Administrative Order of June 3, 2020, the courts began a progressive resumption of judiciary operations including the scheduling and hearing of Attorney Grievance Commission matters, effective July 20, 2020, with the continued authorization to conduct remote proceedings.

judge conducted a remote hearing, at which Bar Counsel and Armstrong appeared. Armstrong represented himself. At the hearing, Armstrong indicated that he did not oppose Bar Counsel's proposed findings of fact and that he did not object to the order of default that had been entered against him. The hearing judge, without objection from Armstrong, deemed admitted the facts set forth in the request for admissions. At the hearing, Armstrong's only request was to be permitted to present information regarding treatment for depression. The hearing judge granted the request, and, after the hearing, Armstrong sent the hearing judge a copy of a letter from a psychiatrist that indicated the psychiatrist had been treating Armstrong.

On September 14, 2020, the hearing judge filed in this Court an opinion including findings of fact and conclusions of law, concluding that Armstrong had violated MARPC 1.1, 1.2(a), 1.3, 1.4(a) and (b), 1.5(a), 1.5(c), 1.15(a), (c), and (d), 1.16(d), 3.4(d), 4.1(a), 8.1(b), 8.4(b), 8.4(c), 8.4(d), and 8.4(a), and BOP § 10-306.[2]

On October 1, 2020, Bar Counsel filed a Request to Waive Oral Argument. On October 2, 2020, this Court issued a Show Cause Order, directing Armstrong to show cause on or before October 23, 2020, why oral argument should be heard. Armstrong did not file a response to the Show Cause Order, or anything else, in this Court. On October 30, 2020, this Court issued an order granting the Request to Waive Oral Argument.

---

[2]Although Bar Counsel also charged Armstrong with violating MARPC 3.4(c) in one matter, the hearing judge made no conclusion as to whether or not Armstrong violated MARPC 3.4(c). Bar Counsel has not filed an exception as to the lack of a conclusion that Armstrong violated MARPC 3.4(c). Accordingly, we do not address the alleged violation of MARPC 3.4(c).

- 3 -

On November 20, 2020, in a *per curiam* order, we disbarred Armstrong. See Attorney Grievance Comm'n v. Darryl Russel Armstrong, ___ Md. ___, ___ A.3d ___, Misc. Docket AG No. 35, Sept. Term, 2019, 2020 WL 6815871, at *1 (Md. Nov. 20, 2020). We now explain the reasons for Armstrong's disbarment.

## BACKGROUND

The hearing judge found the following facts, which we summarize.

On June 17, 2014, this Court admitted Armstrong to the Bar of Maryland. At all relevant times, Armstrong maintained an office for the practice of law in Baltimore City known as "DRA e-law, LLC."

### Blessing Ngong Matter

On December 31, 2014, Blessing Ngong executed a sales contract with Jerry's Toyota, Inc. ("Jerry's") for the purchase of a vehicle. On January 6, 2015, Ngong executed an agreement with Lease-It, Inc. ("Lease-It"), in which she purportedly agreed to lease the vehicle. Months later, in August 2015, Ngong came to believe that Jerry's had fraudulently converted her sales contract to a lease agreement. On August 11, 2015, Ngong met with Armstrong to discuss her options in pursuing legal action against Jerry's. On August 20, 2015, Ngong executed a retainer agreement with Armstrong, agreeing to pay a flat fee of $1,000. The same day, Ngong paid Armstrong $500. Between August and December 2015, Ngong paid Armstrong the remaining $500.

On September 4, 2015, Armstrong sent a letter to Jerry's, advising Jerry's of his representation of Ngong and the potential for litigation, and advising Jerry's to preserve evidence. Nine months later, on June 9, 2016, on Ngong's behalf, Armstrong filed a breach

of contract action against Jerry's and Lease-It in the Circuit Court for Baltimore County. Jerry's and Lease-It filed answers, and the circuit court issued a scheduling order, setting a pre-trial conference for March 30, 2017.

On October 27, 2016, Jerry's and Lease-It propounded interrogatories and requests for production of documents. Armstrong failed to inform Ngong of the discovery requests and failed to prepare or submit discovery responses on Ngong's behalf. On January 20, 2017, due to the lack of response, Jerry's and Lease-It filed a motion to compel discovery and sought sanctions. Armstrong did not inform Ngong that a motion to compel had been filed and he did not file a response to the motion. On February 21, 2017, the circuit court granted the motion and ordered Ngong to submit her discovery responses within five days of the date of the order. Armstrong did not inform Ngong of the February 21, 2017 order and he did not prepare or submit discovery responses on Ngong's behalf. On March 15, 2017, due to the continued lack of discovery responses, Jerry's and Lease-It filed a motion for sanctions. Armstrong failed to inform Ngong of the motion for sanctions and he did not file a response to the motion.

On March 30, 2017, the circuit court held the scheduled pre-trial conference. Armstrong failed to advise Ngong of the pre-trial conference and neither he nor Ngong attended. On April 5, 2017, as a sanction for Ngong's failure to respond to discovery and failure to appear at the pre-trial conference, the circuit court dismissed the case with prejudice. Armstrong received the dismissal order and intentionally concealed the order from Ngong. A few months later, in July 2017, Ngong discovered that the case had been dismissed.

On July 29, 2017, in a text message, Ngong told Armstrong that she intended to file a disciplinary complaint against him. Armstrong replied: "[P]lease do not do that. I have a solution to make it right. We can talk on Monday." On August 3, 2017, Ngong met with Armstrong. During that meeting and on several other occasions, Armstrong represented to Ngong that he would file a new lawsuit on her behalf against others. Armstrong, however, did not file a new lawsuit, and eventually he stopped communicating with Ngong.

Ngong ended up retaining new counsel, William Sherwood. In the fall of 2017, Sherwood contacted Armstrong concerning Ngong's case. Armstrong agreed to compensate Ngong $12,500 for his failure to prosecute her case. Pursuant to the agreement, Armstrong agreed to pay Ngong an initial payment of $3,000 by November 15, 2017, and to pay her $1,583.30 each month for the six months after that. On November 17, 2017, two days later than agreed, Armstrong paid Ngong $3,000. On December 14, 2017, Armstrong paid Ngong $1,583. Armstrong made no other payments to Ngong and failed to respond to Sherwood, who attempted to contact him.

## Complaint of Team CJB Therapy Centers

From early 2017 through the summer of 2018, Armstrong represented seventeen clients in personal injury cases who were treated by Team CJB Therapy Centers ("CJB"), a physical therapy facility located in Halethorpe, Maryland.

### *Anita Johnson*

On March 26, 2017, Anita Johnson was injured in a motor vehicle accident. Johnson retained Armstrong to pursue damages in connection with the accident. As a result of her injuries, Johnson sought medical treatment from CJB. On August 3, 2017, Armstrong sent

a letter to CJB advising that he was representing Johnson.

On October 17, 2017, USAA General Indemnity Company issued a settlement check for $8,000, payable to Armstrong and Johnson. At the time that Armstrong received the check, he was aware that Johnson had an outstanding balance of $3,000 due to CJB. On October 24, 2017, Armstrong deposited the check into his attorney trust account. On October 27, 2017, Armstrong prepared a settlement disbursement sheet for Johnson, which reflected that Johnson was owed $2,734, and that he had withheld $2,666 for his attorney's fees, $2,500 for outstanding medical bills, and $100 for records and processing. On the same date, Armstrong issued a disbursement check to Johnson in the amount of $2,734 and transferred $2,666.66 for his attorney's fees from his attorney trust account to his law firm's operating account. Armstrong failed to pay CJB or any other medical provider on Johnson's behalf. Armstrong also failed to remit to Johnson the $2,500 withheld for outstanding medical bills. The hearing judge found that Armstrong knowingly and intentionally misappropriated the funds for his personal use and benefit.

On November 7, 2017, State Farm issued a settlement check for $8,000, payable to Armstrong and Johnson. Armstrong failed to deposit and maintain the funds in an attorney trust account. Instead, Armstrong deposited the settlement check into his law firm's operating account. Armstrong did not obtain Johnson's informed consent to deposit her funds in an account other than an attorney trust account.

On November 10, 2017, Armstrong issued a check from his operating account to Johnson in the amount of $404.33. On December 12, 2017, Armstrong issued a check from his attorney trust account to Johnson in the amount of $1,566. Armstrong owed Johnson

additional funds from the State Farm settlement check, but he did not disburse those funds to Johnson. Instead, the hearing judge found that Armstrong misappropriated those funds for his personal use and benefit.

### *Keith Roundtree*

On March 26, 2017, Keith Roundtree was injured in a motor vehicle accident. Roundtree retained Armstrong to pursue damages in connection with the accident. As a result of his injuries, Roundtree sought medical treatment from CJB. On August 3, 2017, Armstrong sent a letter to CJB advising that he was representing Roundtree.

On October 17, 2017, USAA General Indemnity Company issued a settlement check for $7,000, payable to Armstrong and Roundtree. At the time that Armstrong received the check, he knew that Roundtree had a balance of $3,000 due to CJB. Armstrong deposited the check into his attorney trust account. Armstrong failed to prepare a settlement disbursement sheet for Roundtree. On October 27, 2017, Armstrong issued a disbursement check to Roundtree for $3,662 and transferred his attorney's fees of $2,333.33 from his attorney trust account to his operating account. Armstrong retained $1,004.67 of Roundtree's funds and failed to pay CJB or any other medical provider on Roundtree's behalf. According to the hearing judge, Armstrong knowingly and intentionally misappropriated the funds for his personal use and benefit.

### *Keevon Jones*

On June 12, 2017, Keevon Jones was injured in a motor vehicle accident. As a result of his injuries, Jones sought medical treatment from CJB. On or about June 12, 2017, Jones executed an authorization and assignment, assigning a portion of his settlement

proceeds to CJB for medical bills. Jones retained Armstrong to pursue damages in connection with the accident. On June 22, 2017, Armstrong sent a letter to CJB advising that he was representing Jones. On July 5, 2017, CJB sent Armstrong a final bill for Jones. On August 3, 2017, as Jones's attorney, Armstrong signed the authorization and assignment with CJB, thereby agreeing to be legally bound by Jones's assignment of settlement proceeds to CJB.

On March 19, 2018, Geico Casualty Company issued a settlement check for $3,750, payable to Armstrong and Jones. When he received the check, Armstrong knew that Jones had an outstanding balance of $1,000 due to CJB. On or about March 22, 2018, Armstrong deposited the check in his attorney trust account. On April 3, 2018, Armstrong issued a disbursement check to Jones for $2,400. The following day, Armstrong prepared a settlement disbursement sheet for Jones, which reflected that Jones was owed $2,400, and that he (Armstrong) had withheld $1,250 for his attorney's fees and $100 for records and processing. Armstrong did not withhold any funds to pay CJB and, despite having executed the authorization and assignment, Armstrong failed to pay, on Jones's behalf, any funds to CJB.

### Terrence Jones

On June 12, 2017, Terrence Jones was injured in a motor vehicle accident. Jones retained Armstrong to pursue damages in connection with the accident. As a result of his injuries, Jones sought medical treatment from CJB. On June 13, 2017, Jones executed an authorization and assignment, assigning a portion of his settlement proceeds to CJB for medical bills. Armstrong was aware that Jones had executed the authorization and

assignment. On June 22, 2017, Armstrong sent a letter to CJB advising that he was representing Jones. On July 13, 2017, CJB sent Armstrong a final bill for Jones.

On March 19, 2018, Geico Casualty Company issued a settlement check for $3,700, payable to Armstrong and Jones. When he received the check, Armstrong knew that Jones had an outstanding balance of $1,000 due to CJB. Armstrong deposited the check into his attorney trust account. On April 3, 2018, Armstrong issued a disbursement check to Jones for $2,366 and transferred $1,160 for his attorney's fees from his attorney trust account to his operating account. On April 4, 2018, Armstrong prepared a settlement disbursement sheet for the case, which reflected that Jones received $2,366, and that Armstrong had withheld $1,233 for his attorney's fees and $100 for records and processing. Armstrong did not withhold any funds to pay CJB.

### *Dominic Knight*

On June 12, 2017, Dominic Knight was injured in a motor vehicle accident. Knight retained Armstrong to pursue damages in connection with the accident. As a result of his injuries, Knight sought medical treatment from CJB. On June 13, 2017, Knight executed an authorization and assignment, assigning a portion of his settlement proceeds to CJB for medical bills. On June 22, 2017, Armstrong sent a letter to CJB advising that he was representing Knight. On July 19, 2017, CJB sent Armstrong a final bill for Knight. On August 3, 2017, as Knight's attorney, Armstrong signed the authorization and assignment with CJB, thereby agreeing to be legally bound by Knight's assignment of settlement proceeds to CJB.

On March 19, 2018, Geico Casualty Company issued a settlement check for $3,900,

payable to Armstrong and Knight. At the time that Armstrong received the check, he knew that Knight had an outstanding balance of $3,000 due to CJB. Armstrong deposited the check into his attorney trust account. On April 3, 2018, Armstrong issued a disbursement check to Knight for $1,300. On April 4, 2018, Armstrong prepared a settlement disbursement sheet for the case, which reflected that Knight was owed $1,300, and that Armstrong had withheld $1,300 for his attorney's fees, $1,200 for outstanding medical bills, and $100 for records and processing. Despite the executed authorization and assignment, Armstrong failed to pay funds to CJB or any other medical provider on Knight's behalf. Armstrong failed to remit the $1,200 he had withheld for medical bills to Knight and instead, according to the hearing judge, misappropriated the funds for his personal use and benefit.

### DaAundre Lawson

On June 12, 2017, DaAundre Lawson was injured in a motor vehicle accident. Lawson retained Armstrong to pursue damages in connection with the accident. As a result of his injuries, Lawson sought medical treatment from CJB. On June 13, 2017, Lawson executed an authorization and assignment, assigning a portion of his settlement proceeds to CJB for medical bills.[3] On June 22, 2017, Armstrong sent a letter to CJB advising that he was representing Lawson. On July 13, 2017, CJB sent Armstrong a final bill for Lawson. On August 3, 2017, as Lawson's attorney, Armstrong signed the authorization and assignment, agreeing to be legally bound by Lawson's assignment of settlement

---

[3]In discussing Armstrong's representation of Lawson, the hearing judge in one instance inadvertently referred to Lawson as "Knight."

proceeds to CJB.

On March 19, 2018, Geico Casualty Company issued a settlement check for $3,400, payable to Armstrong and Lawson. At the time that Armstrong received the check, he knew that Lawson had a balance of $3,500 due to CJB. Armstrong deposited the check into his attorney trust account. On April 3, 2018, Armstrong issued a disbursement check to Lawson for $2,166. On April 4, 2018, Armstrong prepared a settlement disbursement sheet for Lawson, which reflected that Lawson was owed $2,166, and that Armstrong had withheld $1,133 for his attorney's fees and $100 for records and processing. Armstrong failed to withhold funds to pay CJB and, despite the executed authorization and assignment, Armstrong failed to pay any funds to CJB on Lawson's behalf.

### *Darius McCoy*

On June 12, 2017, Darius McCoy was injured in a motor vehicle accident. McCoy retained Armstrong to pursue damages in connection with the accident. As a result of his injuries, McCoy sought medical treatment from CJB. On June 13, 2017, McCoy executed an authorization and assignment, assigning a portion of his settlement proceeds to CJB for medical bills. On June 22, 2017, Armstrong sent a letter to CJB advising that he was representing McCoy. On July 26, 2017, CJB sent Armstrong a final bill for McCoy. On August 3, 2017, as McCoy's attorney, Armstrong signed the authorization and assignment, agreeing to be legally bound by McCoy's assignment of settlement proceeds to CJB.

On March 19, 2018, Geico Casualty Company issued a settlement check for $3,500, payable to Armstrong and McCoy. When he received the check, Armstrong knew that McCoy had a balance of $1,000 due to CJB. Armstrong deposited the check into his

attorney trust account. On July 6, 2018, Armstrong prepared a settlement disbursement sheet for McCoy, which reflected that McCoy was owed $733 and that Armstrong had withheld $1,166 for his attorney's fees, $1,500 for "legal case," and $101 for records and processing. On the same date, Armstrong transferred $1,237 in attorney's fees from his attorney trust account to his operating account. Armstrong did not withhold any funds to pay CJB and, despite the executed authorization and assignment, he failed to pay any funds to CJB on McCoy's behalf.

### *Brittney Henderson*

On September 24, 2017, Brittney Henderson was injured in a motor vehicle accident. Henderson retained Armstrong to pursue damages in connection with the accident. As a result of her injuries, Henderson sought medical treatment from CJB.

On December 5, 2017, Government Employees Insurance Company issued a settlement check for $3,500, payable to Armstrong and Henderson. When he received the check, Armstrong knew that Henderson had a balance of $2,500 due to CJB. Armstrong deposited the check into his attorney trust account. On December 22, 2017, Armstrong prepared a settlement disbursement sheet for Henderson, which reflected that Henderson was owed $1,018 and that he had withheld $1,166 for his attorney's fees, $1,166 for "medical fees[,]" and $150 for records and processing. On the same date, Armstrong issued a disbursement check to Henderson for $1,018. Armstrong failed to pay funds to CJB or any other medical provider on Henderson's behalf. Armstrong failed to remit to Henderson the $1,166 withheld for medical bills. The hearing judge found that Armstrong misappropriated the funds for his personal use and benefit.

- 13 -

### Jeffrey Williams

On September 24, 2017, Jeffrey Williams was injured in a motor vehicle accident. Williams retained Armstrong to pursue damages in connection with the accident. As a result of his injuries, Williams sought medical treatment from CJB.

On December 5, 2017, Government Employees Insurance Company issued a settlement check for $4,000, payable to Armstrong and Williams. At the time that Armstrong received the check, he knew that Williams had a balance of $3,000 due to CJB. Armstrong deposited the check into his attorney trust account. On December 22, 2017, Armstrong prepared a settlement disbursement sheet for Williams, which reflected that Williams was owed $1,333 and that Armstrong had withheld $1,333 for his attorney's fees and $1,333 for "medical records." On December 14, 2017, Armstrong transferred $1,333.33 in attorney's fees from his attorney trust account to his operating account. On the same day, Armstrong issued a disbursement check for $1,333.33 to Williams. Armstrong failed to pay funds to CJB or any other medical provider on Williams's behalf. Armstrong failed to remit to Williams the $1,333.33 withheld for medical bills. The hearing judge found that Armstrong misappropriated the funds for his personal use and benefit.

### Cenee Barnes

On July 23, 2017, Cenee Barnes, Tacori Robinson, and Zaire Harvey were injured in a motor vehicle accident. At the time of the accident, Barnes was the legal guardian of Robinson and Harvey. Barnes retained Armstrong to pursue damages in connection with the accident. As a result of their injuries, Barnes, Robinson, and Zaire sought medical

treatment from CJB.

On June 26, 2018, Allstate issued a settlement check for $3,675, payable to Armstrong and Barnes. On the same date, Allstate issued a settlement check for $3,757, payable to Armstrong and Barnes as Robinson's legal guardian, and a settlement check for $3,757, payable to Armstrong and Barnes as Harvey's legal guardian. When he received the checks, Armstrong knew that Barnes had a balance of $1,213 due to CJB, that Robinson has a balance of $1,240 due to CJB, and that Harvey had a balance of $1,240 due to CJB. Armstrong deposited the three checks into his attorney trust account. On July 6, 2018, Armstrong prepared three settlement disbursement sheets for the case. The sheet for Barnes reflected that she was owed $1,249.50 and that Armstrong had withheld $1,212.75 for his attorney's fees and $1,212.75 for medical bills. The sheet for Robinson reflected that she was owed $1,277.38 and that Armstrong had withheld $1,239.81 for his attorney's fees and $1,239.81 for medical bills. And, the sheet for Harvey reflected that she was owed $1,277.38 and that Armstrong had withheld $1,239.81 for his attorney's fees and $1,239.81 for medical bills. On July 5, 2018, Armstrong transferred $4,700 in attorney's fees from his attorney trust account to his operating account. The following day, Armstrong issued three disbursement checks to Barnes—for $1,249.50, $1,277.38, and $1,277.38. Armstrong failed to pay funds to CJB or any other medical provider on behalf of Barnes, Robinson, or Harvey. According to the hearing judge, Armstrong knowingly and intentionally misappropriated the funds for his personal use and benefit.

### *Amiya Owens*

On September 24, 2017, Amiya Owens ("Amiya"), a minor, was injured in a motor

vehicle accident. Amiya, through her parent and legal guardian, Brian Owens, retained Armstrong to pursue damages in connection with the accident. As a result of her injuries, Amiya sought medical treatment from CJB.

On December 5, 2017, GEICO issued a settlement check for $4,000, payable to Armstrong and Brian Owens, as parent and legal guardian of Amiya. At the time that Armstrong received the check, he knew that Amiya had a balance of $3,495 due to CJB. Armstrong deposited the check into his attorney trust account. On December 22, 2017, Armstrong prepared a settlement disbursement sheet for the case, which reflected that Amiya was owed $1,333 and that he had withheld $1,333 for his attorney's fees and $1,333 for "medical records." On December 14, 2017, Armstrong transferred $1,333 from his attorney trust account to his operating account. On January 3, 2018, Armstrong issued a disbursement check to Amiya for $100. The additional $1,233 due to Amiya is unaccounted for; there was no indication that the funds due to Amiya were disbursed to her, her guardian, or into a minor's trust. Armstrong failed to pay funds to CJB or any other medical provider on Owens's behalf. Armstrong failed to remit to Amiya the $1,333 withheld for medical bills. According to the hearing judge, Armstrong knowingly and intentionally misappropriated the funds for his personal use and benefit.

### Juanita Owens

On September 24, 2017, Juanita Owens was injured in a motor vehicle accident. Owens retained Armstrong to pursue damages in connection with the accident. As a result of her injuries, Owens sought medical treatment from CJB.

On December 5, 2017, GEICO issued a settlement check for $4,500, payable to

Armstrong and Owens. When he received the check, Armstrong knew that Owens had a balance of $4,212 due to CJB. Armstrong deposited the check into his attorney trust account. Armstrong failed to prepare a written statement or settlement disbursement sheet for Owens reflecting how the settlement funds were disbursed. On December 14, 2017, Armstrong transferred $1,500 for attorney's fees from his attorney trust account to his operating account. On December 22, 2017, Armstrong issued a disbursement check to Owens for $1,350. Armstrong failed to disburse the remaining settlement funds ($1,650) to CJB or any other medical provider on Owens's behalf. Armstrong failed to remit to Owens the $1,650 withheld. According to the hearing judge, Armstrong knowingly and intentionally misappropriated the funds for his personal use and benefit.

### *CJB's Contact with Armstrong*

Throughout the time that Armstrong represented people who sought medical treatment at CJB, CJB attempted to contact him to determine the status of its patients' settlements. Armstrong did not respond.

On August 1, 2018, E. David Silverberg, CJB's counsel, wrote to Armstrong asking about the status of several of CJB's patients' cases. Armstrong did not respond. On August 7, 2018, Silverberg sent Armstrong a second letter. Armstrong again did not respond.

On August 29, 2018, CJB, through its owner, Spencer Arrington, filed a complaint against Armstrong with Bar Counsel. On October 5, 2018, Bar Counsel sent Armstrong a copy of the complaint and requested a response in writing. On October 16, 2018, Armstrong wrote a letter to Janice Williams, a CJB employee, and mailed the letter to Williams's home address. Armstrong knew that Williams and CJB were represented by

Silverberg. In the letter, Armstrong intentionally misrepresented to CJB that he had inadvertently paid Jarrett Chiropractic, instead of CJB, for treatment rendered for Johnson and Roundtree. Armstrong attached to the letter copies of two cancelled checks from his attorney trust account issued to Jarrett Chiropractic and copies of check stubs. The first check, Number 1040, was dated December 12, 2017, and in the amount of $2,500. The memo line was blank. The accompanying check stub reflected that the check was issued from Armstrong's attorney trust account to Jarrett Chiropractic for "Anita Johnson Medical Bills." The second check, Number 1041, was dated December 12, 2017, and in the amount of $450. The memo line was blank. The accompanying check stub reflected that the check was issued from Armstrong's attorney trust account to Jarrett Chiropractic for "Keith Roundtree Medical Bills." The hearing judge found that Armstrong intentionally doctored the two checks to delete the information on the memo lines to make it seem that the checks were for Johnson and Roundtree. The authentic checks, received from the bank, included notations on the memo lines indicating that the checks were issued to Jarrett Chiropractic for a different client. Additionally, in the letter to Williams, Armstrong referred to CJB's complaint to Bar Counsel, stating: "Now that I know the proper company to pay, I will forward you what is owed immediately as soon as the Grievance Commission is informed of this misunderstanding." Armstrong also attached to the letter documents concerning his representation of some of the clients who sought medical treatment at CJB.

On October 16, 2018, after receiving the October 5, 2018 letter from Bar Counsel, Armstrong went to CJB's office and twice told CJB's employees: "I will blow up this building before I will allow you to take my license." CJB's employees called the Baltimore

Police Department and reported the incident, and a police report was prepared. Ultimately, Armstrong failed to remit funds due to CJB or to return the funds to his clients.

## Louise R. Whiting Matter

In the winter of 2017, Louise R. Whiting was injured in a motor vehicle accident. Shortly thereafter, Whiting retained Armstrong to pursue damages in connection with the accident. After retaining Armstrong, Whiting and others on her behalf attempted to contact him multiple times to determine the status of Whiting's case. Armstrong did not respond at all.

In April 2019, Armstrong advised Whiting, through a relative, that he had settled her case for $10,000 and that she would receive $6,000. Armstrong advised that he would not release the funds until he confirmed that there was no lien on the settlement proceeds. Armstrong failed to deposit and maintain the settlement funds in an attorney trust account. Armstrong also failed to pay Whiting her settlement proceeds and, according to the hearing judge, intentionally misappropriated the funds for his personal use and benefit.

## Cheryl L. Merriman Matter

On February 20, 2017, Cheryl L. Merriman was injured in a motor vehicle accident. On April 17, 2017, Merriman retained Armstrong to pursue damages in connection with the accident. Merriman agreed to pay Armstrong on a contingency fee basis, but Armstrong failed to put the contingent fee arrangement in writing. In fact, there was no written retainer agreement.

On September 14, 2017, Armstrong sent Travelers Insurance Company a demand on Merriman's behalf. In the cover letter, Armstrong stated that Merriman had received

medical treatment from Bowie Health Center, Total Wellness Center, and Maryland Healthcare Clinics and had medical bills totaling $6,453. Within days of sending the demand, Armstrong settled Merriman's case for $16,000. On September 16, 2017, Merriman executed a "Release in Full[,]" and on September 18, 2017, Travelers Insurance Company issued a settlement check, payable to Armstrong and Merriman.

On or about September 20, 2017, Armstrong received the settlement check and deposited it into his attorney trust account. On September 20, 2017, Armstrong issued a disbursement check to Merriman for $8,524.74. On September 25, 2017, Armstrong provided Merriman a settlement disbursement sheet, which reflected that he had withheld $5,333.26 in attorney's fees, $2,000 for medical bills, and $142.60 for records and processing. Armstrong did not pay any of Merriman's healthcare providers.

Months later, on June 15, 2018, Merriman received a letter from Maryland Healthcare Clinics stating that she had an outstanding balance of $4,505.34. After receiving the letter, Merriman attempted to contact Armstrong by phone several times, but he failed to respond. Eventually, Merriman contacted Lisa Armstrong, Armstrong's wife, through Facebook. Merriman then spoke with Armstrong, who assured her that he would pay the outstanding balance with Maryland Healthcare Clinics. Armstrong never took any action, though, with respect to the bill and he did not pay any funds to Maryland Healthcare Clinics.

On May 13, 2019, Merriman received a second letter from Maryland Healthcare Clinics stating that she still owed $4,505.34. Merriman attempted to contact Armstrong by phone several times but received no response. Between May 16, 2019, and May 25, 2019,

Merriman exchanged text messages with Armstrong's wife. In one text message on May 16, 2019, Merriman confirmed Armstrong's phone number and e-mail address. The following day, Merriman sent an e-mail to Armstrong advising him of the second letter from Maryland Healthcare Clinics. On the same day, Merriman e-mailed Armstrong requesting that he provide her with a copy of the release she had executed. On May 20 and 21, 2019, Merriman sent follow-up e-mails to Armstrong. Armstrong did not respond to any of the e-mails. On May 22, 2019, Merriman contacted Maryland Healthcare Clinics and was informed that Armstrong had not remitted any funds on her behalf. Armstrong failed to return the $2,000 that he had withheld for Merriman's medical bills and the hearing judge found that he intentionally misappropriated the funds for his personal use and benefit.

### Nancy Schaffer Matter

In May 2017, the apartment complex where Nancy Schaffer lived removed the handrail to the stairway to her apartment building. Schaffer wrote to the complex, requesting that it re-install the handrail. The complex denied the request. On May 31, 2017, Schaffer was injured when she fell down the stairs of her apartment building. On June 14, 2017, Schaffer was injured when she fell down the stairs a second time. The following day, Schaffer retained Armstrong to represent her in a housing discrimination claim that she wanted to file with the United States Department of Housing and Urban Development ("HUD") and in a personal injury action that she wanted to file against the complex. On June 15, 2017, Schaffer executed a written retainer agreement.

On July 28, 2017, Schaffer filed a housing discrimination complaint with HUD. On

July 31, 2017, HUD sent to Schaffer a letter advising that her complaint had been referred to the Maryland Commission on Civil Rights ("MCCR") for further investigation. On October 16, 2017, Kara Hunt, a Civil Rights Officer assigned to investigate Schaffer's complaint, sent an e-mail to Armstrong requesting that he enter his appearance and submit a settlement demand on Schaffer's behalf. The following day, Armstrong wrote to Hunt, advising that he intended to submit Schaffer's medical bills. Armstrong, however, failed to submit a settlement demand or the medical bills. Shortly thereafter, Hunt sent an e-mail to Armstrong, asking about the medical bills and requesting a settlement demand and to schedule an interview on November 6, 2017 with Schaffer. Armstrong did not respond to Hunt's e-mail or provide the requested documents.

On November 21, 2017, Schaffer spoke to Hunt. At that time, Hunt told Schaffer that Armstrong was not cooperating with MCCR's investigation. On the same day, Schaffer sent a fax to Heather Sell, Armstrong's administrative assistant, requesting that Armstrong promptly contact Hunt. Also on the same day, Sell sent an e-mail to Hunt, copying Armstrong on the message, providing Armstrong's contact information. On the same day, Hunt responded, copying Armstrong on the message, and explained that Armstrong had not cooperated with the investigation. Armstrong did not take any action to cooperate with MCCR or to provide the requested documents.

In December 2017, Armstrong advised Schaffer that he would file a personal injury action on her behalf within a few months. Schaffer told Armstrong that she was interested in obtaining a loan advance against her future settlement from Global Financial. Armstrong encouraged Schaffer to obtain the loan and, according to the hearing judge,

intentionally misrepresented to Schaffer that her case would be "settled soon." Based on Armstrong's assurances, Schaffer obtained a $5,000 loan from Global Financial. On December 4, 2017, Armstrong completed an "Attorney Questionnaire" portion of Schaffer's loan application and intentionally misrepresented that the value of Schaffer's case was $80,000 and that the case would be settled within six months. Armstrong, however, did not obtain Schaffer's medical records, submit a settlement demand to MCCR, or file a personal injury action on Schaffer's behalf.

On January 28, 2018, MCCR issued a written opinion finding that there was no probable cause to believe that the complex had discriminated against Schaffer. As explained in the opinion, pursuant to the applicable regulation, Schaffer had fifteen days from the date that the opinion was mailed to apply for reconsideration of the adverse finding. On January 31, 2018, MCCR mailed a copy of the opinion to Armstrong. Armstrong did not provide a copy of the opinion to Schaffer or otherwise inform her of the adverse finding. Schaffer ultimately lost the opportunity to apply for reconsideration.

Between November 21, 2017 and July 19, 2018, Armstrong and Schaffer exchanged text messages. During his representation, though, Armstrong failed both to adequately communicate with Schaffer concerning the status of her case and to timely respond to her inquiries. Armstrong also failed to pursue any substantive legal action to pursue a HUD claim or a personal injury action on Schaffer's behalf. By May 1, 2018, Schaffer was dissatisfied with Armstrong and terminated his representation. At that time, Armstrong promised to diligently pursue Schaffer's cases and communicate better, so Schaffer agreed to reinstate Armstrong's representation. Despite his promises, though, Armstrong

continued to neglect Schaffer's cases and he ignored her attempts to contact him.

The hearing judge found that on June 12, 2018, in a text message, Armstrong intentionally misrepresented to Schaffer that he had filed a personal injury action in the circuit court on her behalf. Over the next few weeks, Armstrong continued to mislead Schaffer into believing that a personal injury action had been filed. After a few weeks, Schaffer herself contacted the circuit court and discovered that no personal injury action had been filed on her behalf. In a letter dated July 13, 2018, Schaffer terminated Armstrong's representation. On the same day, Schaffer spoke with Armstrong's administrative assistant, who confirmed that Armstrong had failed to file the personal injury action. At or about that time, Schaffer also requested a copy of her case file, but Armstrong never provided it to her.

**Carmen Gunici Matter**

On August 31, 2017, Carmen Gunici, a person from Romania who does not speak English, entered the United States seeking asylum. On November 20, 2018, Gunici retained Armstrong to represent her at a Master Calendar hearing in her asylum case that was scheduled for the following day. On November 21, 2018, Armstrong appeared with Gunici at the hearing. The Immigration Court instructed Gunici to file an asylum application by March 21, 2019 and advised her that if the asylum application was not timely filed, she would be ordered removed from the United States. The hearing was not translated in Romanian and Gunici did not understand the instructions.

After the hearing, Armstrong failed to explain to Gunici the Immigration Court's instructions or to advise of the March 21, 2019 filing deadline. Gunici and her husband

attempted to contact Armstrong several times for an update on her case, but Armstrong did not respond. Gunici did not understand the significance of the March 21, 2019 filing deadline and did not file an asylum application by that date. Accordingly, on April 2, 2019, the Immigration Court issued an order of removal, ordering that Gunici be removed from the United States. On April 14, 2019, Gunici's husband called the Immigration Court Information System and discovered that the order of removal had been issued. Afterward, Gunici and her husband tried contacting Armstrong several times, but did not receive a response.

Because she was unable to reach Armstrong, Gunici retained John E. Gallagher. On July 5, 2019, Gallagher filed a motion to reopen, and on July 8, 2019, he filed an asylum application and withholding of removal. The motion to reopen and asylum application were denied.

### Deqwan Cheatham Matter

In March 2018, Deqwan Cheatham was arrested in Baltimore City and charged with crimes in the Circuit Court for Baltimore City. The following month, Cheatham's mother, Tevya Cheatham, retained Armstrong to represent Cheatham and she agreed to pay a flat fee of $3,000 to Armstrong. On May 22, 2018, Cheatham's mother paid Armstrong $700 by money order. The next day, she paid Armstrong $400. On June 4, 2018, another of Cheatham's relatives paid Armstrong $400. Armstrong failed to deposit and maintain any of these funds in an attorney trust account until earned.

On June 4, 2018, Armstrong entered his appearance on Cheatham's behalf and filed pretrial motions. Thereafter, however, Armstrong failed to appear at several hearings

scheduled in the case. On September 17, 2018, the day on which trial was scheduled to begin, Armstrong requested a postponement to December 4, 2018, which the circuit court granted. On October 12, 2018, the circuit court further postponed the trial until April 29, 2019.

On January 7, 2019, Armstrong appeared for a status conference, but was unprepared. Indeed, prior to the status conference, Armstrong had not met with Cheatham or communicated with him in any way. At the status conference, Cheatham informed the circuit court that Armstrong's representation was inadequate, and the circuit court permitted him to terminate Armstrong's representation and retain new counsel. At the end of the status conference, Armstrong told Cheatham that he would refund all legal fees that he had been paid. Armstrong failed, however, to refund any of the fees paid and he failed to provide any meaningful legal services to Cheatham. During Armstrong's representation, Cheatham's mother had attempted to communicate with Armstrong about the case several times, but Armstrong failed to adequately or timely respond.

**Alvin Knox Matter**

On July 17, 2018, in the District Court of Maryland sitting in Baltimore City, Alvin Knox pled guilty to second-degree assault and was sentenced to a term of imprisonment and probation. On October 10, 2018, pursuant to the terms of his probation, Knox reported to his probation officer, Tiffany Douglas. Douglas told Knox that she smelled alcohol on him and that she believed he had driven to the appointment while under the influence of alcohol. That same day, Knox provided a urine sample for urinalysis, which showed that Knox had consumed alcohol in the preceding forty-eight hours. Douglas advised Knox

that she intended to report that he had violated his probation.

On October 28, 2018, Knox retained Armstrong for the purpose of having Armstrong contact Douglas to attempt to persuade her to not report a violation of probation. Knox paid Armstrong a flat fee of $250 in cash. Armstrong did not deposit and maintain the funds in an attorney trust account until earned. After receiving the funds, Armstrong abandoned his representation of Knox and provided no legal services whatsoever for Knox. Armstrong failed to communicate with Knox and failed to contact Douglas to discuss Knox's probation. Armstrong also failed to refund to Knox any of the $250 that Knox had paid him.

### Dequantae McRae Matter

In August 2018, Dequantae McRae was arrested in Baltimore City and charged with crimes in two cases in the District Court of Maryland sitting in Baltimore City. On August 25, 2018, Yvette Satchell, McRae's mother, retained Armstrong to represent McRae for a flat fee of $4,000. On the same day, Satchell paid Armstrong $2,800 through three money orders and $200 in cash. Armstrong failed to deposit and maintain the funds in an attorney trust account until earned. Instead, Armstrong deposited the funds into his operating account. Armstrong did not obtain Satchell's informed consent to deposit the funds in an account other than an attorney trust account.

Thereafter, Satchell attempted several times to contact Armstrong for an update on McRae's cases. Armstrong did not respond. On October 11, 2018, Satchell spoke with Armstrong by phone and Armstrong promised to communicate better. After the phone call, Armstrong stopped communicating with Satchell and ignored her efforts to

communicate with him.

On November 2, 2018, Armstrong entered his appearance on McRae's behalf in both cases and filed a motion for bail review and a motion for consolidation. Armstrong appeared for a preliminary hearing but was unprepared. Indeed, prior to the hearing, Armstrong had not communicated or met with McRae at all. After the preliminary hearing, Armstrong failed to appear at several proceedings, including the arraignment on November 9, 2018. On November 30, 2018, with McRae's authorization, Satchell sent a text message to Armstrong terminating his representation and requesting a refund of the fees paid. Armstrong failed to provide any meaningful legal services to McRae and did not return any of the fees that Satchell had paid.

In December 2018, Satchell retained Donald Wright to represent McRae. Wright wrote to Armstrong, requesting a copy of McRae's case file. Armstrong did not respond or provide the case file to Wright.

## Bar Counsel's Investigations

On May 3, 2018, Ngong filed a complaint against Armstrong with Bar Counsel. On May 10, 2018, Bar Counsel forwarded a copy of the complaint to Armstrong and requested a written response by May 31, 2018. Armstrong did not respond. Bar Counsel sent follow-up letters on July 3, 2018, July 20, 2018, and August 10, 2018; Armstrong failed to respond to these letters too. On September 12, 2018, Edwin P. Karr, an investigator with the Attorney Grievance Commission, sent Armstrong an e-mail requesting that Armstrong call him. Armstrong did not respond. On September 14, 2018, Karr sent another e-mail requesting that Armstrong contact him. On September 17, 2018, Karr spoke with

Armstrong on the phone. During the call, Armstrong stated that he had received Bar Counsel's letters but failed to respond because he was gathering documents needed to complete his response. Armstrong advised that he would submit a response the following day, September 18, 2018. Armstrong did not file a response until November 7, 2018.

Meanwhile, on September 26, 2018, Arrington, CJB's owner, filed a complaint on CJB's behalf against Armstrong with Bar Counsel. On October 5, 2018, Bar Counsel forwarded a copy of the complaint to Armstrong and requested a written response by October 26, 2018. Armstrong did not respond. On November 20, 2018, December 18, 2018, and January 17, 2019, Bar Counsel sent follow-up letters. Armstrong did not respond to those letters either.

On January 2, 2019, Knox filed a complaint against Armstrong with Bar Counsel. On January 9, 2019, Bar Counsel forwarded a copy of the complaint to Armstrong and requested a response by January 30, 2019. Armstrong did not respond. On January 16, 2019, Cheatham filed a complaint against Armstrong with Bar Counsel. The following day, Bar Counsel forwarded a copy of the complaint to Armstrong and requested a response by February 1, 2019. Armstrong did not respond to the complaint filed by Cheatham. On January 22, 2019, Schaffer filed a complaint against Armstrong with Bar Counsel. On January 30, 2019, Bar Counsel forwarded a copy of the complaint to Armstrong and requested a response by February 20, 2019.

On February 25, 2019, because Armstrong had not responded to any of the four letters concerning CJB's complaint, Bar Counsel had a process server personally serve Armstrong with copies of its prior letters in the CJB matter, a subpoena for Armstrong's

bank records, and a fifth letter, dated February 19, 2019, requesting a response to CJB's complaint. On March 19, 2019, because Armstrong still had not responded to CJB's complaint, Bar Counsel sent him a sixth letter, by both regular mail and e-mail, requesting a response by March 29, 2019. Armstrong never responded to CJB's complaint.

On February 27, 2019, due to Armstrong's continued lack of response, Bar Counsel sent Armstrong letters concerning the complaints filed by Knox, Cheatham, and Schaffer, requesting responses by March 14, 2019. On March 19, 2019, Bar Counsel sent letters to Armstrong concerning the complaints filed by Knox, Cheatham, and Schaffer, by both regular mail and e-mail, requesting a written response to those complaints by March 29, 2019. In the meantime, on March 15, 2019, Satchell filed a complaint against Armstrong with Bar Counsel. On March 20, 2019, Bar Counsel forwarded a copy of the complaint to Armstrong, requesting a response by April 10, 2019. On April 23, 2019, because Armstrong had not responded to Satchell's complaint, Bar Counsel sent Armstrong another letter, by both regular mail and e-mail, requesting a response by May 8, 2019. Ultimately, Armstrong never responded to the complaints filed by Knox, Cheatham, Schaffer, or Satchell.

Meanwhile, on April 16, 2019, Whiting filed a complaint against Armstrong with Bar Counsel. The next day, Bar Counsel forwarded a copy of the complaint to Armstrong, requesting a response by May 8, 2019. Armstrong did not respond. On May 15, 2019, Bar Counsel sent Armstrong a second letter, requesting a response to Whiting's complaint by May 30, 2019. On May 29, 2019, Merriman filed a complaint against Armstrong with Bar Counsel. On June 24, 2019, Bar Counsel forwarded the complaint to Armstrong,

requesting a response by July 9, 2019.  On July 8, 2019, Gunici filed a complaint against Armstrong with Bar Counsel.  On July 19, 2019, Bar Counsel forwarded the complaint to Armstrong and requested a response by August 2, 2019.  Armstrong never filed a written response to the complaints filed by Whiting, Merriman, or Gunici.

**Attorney Trust Account**

On February 19, 2019, Bar Counsel subpoenaed Armstrong's bank account records, including for his law firm's operating and attorney trust accounts, for the period of January 2017 through January 2019.  Bar Counsel received bank account records from Wells Fargo Bank and performed a financial analysis of the transactions.  The analysis showed that, for the period of January 2017 through January 2019, Armstrong failed to deposit and maintain client and third-party funds in his attorney trust account.  The hearing judge found that the bank records and analysis demonstrated that Armstrong misappropriated client and third-party funds for his personal use and benefit.

Bank records showed that, in five separate instances, Armstrong deposited client funds into his law firm's operating account, without the clients' informed consent to deposit their funds into an account other than an attorney trust account.  Specifically, on September 29, 2017, in a client matter for a Cameron Wilder, Armstrong deposited $9,000 received from an insurance company into the operating account.  On November 7, 2017, in the Anita Johnson matter, Armstrong deposited $8,000 received from State Farm into the operating account.  On May 21, 2018, in the Cheatham matter, Armstrong deposited $700 received from Cheatham's mother into the operating account.  On August 25, 2018, in the McRae matter, Armstrong deposited $2,800 received from McRae's mother into the

- 31 -

operating account. And, on September 25, 2018, in another client matter for a Kennedi Brown, Armstrong deposited $500 received from an insurance company into the operating account.

On nine other occasions, Armstrong also deposited client funds for three client matters into the operating account without the clients' informed consent to deposit the funds into an account other than an attorney trust account. In one client matter, Armstrong deposited $193.32 into the operating account. In another client matter, Armstrong deposited $700 into the operating account. And, in a third client matter, Armstrong deposited seven payments from State Farm dated the same day totaling $2,500 into the operating account.

## Aggravating and Mitigating Factors

The hearing judge found eight aggravating factors. The hearing judge found that Armstrong's misconduct was aggravated by a dishonest and selfish motive. The hearing judge found that Armstrong had intentionally misappropriated client and third-party funds for his own personal use and benefit, that he made knowing and intentional misrepresentations to CJB concerning his failure to pay outstanding client bills, and that he made knowing and intentional misrepresentations to Schaffer regarding her case's status. The hearing judge also found that Armstrong's misconduct was aggravated by a pattern of misconduct, as Armstrong repeatedly accepted funds, abandoned the representation of his clients, and then misappropriated funds belonging to those clients and third parties in eight separate client matters and in the various client matters connected to CJB. And, the hearing judge found that Armstrong's misconduct was aggravated by

multiple offenses.

The hearing judge found that Armstrong's misconduct was aggravated by bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with Bar Counsel's numerous requests for information. The hearing judge also found that Armstrong's misconduct was aggravated by a refusal to acknowledge the wrongful nature of the conduct. According to the hearing judge, at the hearing, when presenting argument concerning a mitigating factor, Armstrong failed to acknowledge the scope of misconduct or to accept any responsibility for his misconduct. The hearing judge pointed out that, in a letter to the hearing judge, Armstrong blamed his administrative assistant for sending a payment to the wrong physical therapy facility. The hearing judge rejected that as an excuse, stating:

> Not only is this excuse disproven by the documentation (and his own admissions), but that particular incident was but one of many. The alleged mislabeling of two checks (which, to be sure, the [hearing judge] rejects; that claim was yet another example of [] Armstrong's obstruction of the attorney discipline process) had nothing to do with the misappropriation of funds in multiple personal injury cases or the gross misconduct in the immigration, criminal, and other matters.

The hearing judge found that Armstrong's misconduct was aggravated by the vulnerability of the victim, as Gunici, was seeking asylum in the United States and does not speak English. The hearing judge found that Armstrong's misconduct was aggravated by an indifference to making restitution, as he failed to refund unearned fees in the Knox, Cheatham, or McRae matters, he failed to honor the settlement agreement with Ngong, and he failed to refund other client and third-party funds that he misappropriated. Finally, the hearing judge found that Armstrong's misconduct was aggravated by illegal conduct, as he

intentionally misappropriated client and third-party funds for his own personal use and benefit.

As to mitigating factors, the hearing judge found that Armstrong's misconduct was mitigated by inexperience in the practice of law and a lack of prior attorney discipline. The hearing judge, however, did not find by a preponderance of the evidence that Armstrong's misconduct was mitigated by either personal or emotional problems or a physical or mental disability or impairment. The hearing judge observed that, in an effort to establish a sole mitigating factor, Armstrong advised that he was being treated by a psychiatrist for depression. On August 14, 2019, after the hearing, Armstrong forwarded to the hearing judge a letter from his treating psychiatrist indicating that he had been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and Bipolar Disorder. According to the hearing judge, "[t]he mere fact that a person has been diagnosed with an impairment or disorder does not establish that the impairment caused, or even played a significant factor in, the conduct [] Armstrong has admitted to."

## STANDARD OF REVIEW

Neither party excepts to any of the hearing judge's findings of fact; thus, we "treat the findings of fact as established[.]" Md. R. 19-741(b)(2)(A). In an attorney discipline proceeding, this Court reviews without deference a hearing judge's conclusions of law. See Md. R. 19-741(b)(1). This Court determines whether clear and convincing evidence establishes that a lawyer violated an MARPC. See Md. R. 19-727(c).

## DISCUSSION

## A. Conclusions of Law

Neither party excepts to the hearing judge's conclusions of law. We uphold all of the hearing judge's conclusions of law.

### MARPC 1.1 (Competence) and 1.3 (Diligence)

"An attorney shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." MARPC 1.1. "Incompetent representation occurs when an attorney fails to take necessary, fundamental steps in a client's case[,]" and may occur where "an attorney fails to appear in court on a client's behalf, fails to adequately prepare a client, or mishandles client funds[.]" Attorney Grievance Comm'n v. Ambe, 466 Md. 270, 288, 218 A.3d 757, 767 (2019) (cleaned up).

"An attorney shall act with reasonable diligence and promptness in representing a client." MARPC 1.3. MARPC "1.3 can be violated by failing to advance the client's cause or endeavor; failing to investigate a client's matter; and repeatedly failing to return phone calls, respond to letters, or provide an accounting for earned fees." Attorney Grievance Comm'n v. Smith-Scott, 469 Md. 281, 340, 230 A.3d 30, 64 (2020) (cleaned up). An attorney violates MARPC 1.3 where the "attorney does nothing whatsoever to advance the client's cause or endeavor, or fails to disburse funds to clients in a timely manner[.]" Attorney Grievance Comm'n v. Smith, 457 Md. 159, 216, 177 A.3d 640, 674 (2018) (citation omitted). And, "the same justifications for finding a violation of [MARPC] 1.1 can support a[n MARPC] 1.3 violation." Smith-Scott, 469 Md. at 340, 230 A.3d at 64

(citation omitted).

Clear and convincing evidence supports the hearing judge's conclusion that Armstrong violated MARPC 1.1 as to numerous clients, with respect to CJB's complaint, and in his handling of his attorney trust account. In the Ngong matter, Armstrong failed to provide competent representation to Ngong by essentially abandoning the representation, and he failed to take necessary, fundamental steps in the case, including failing to respond to discovery. Armstrong compounded that failure by failing to file responses to a motion to compel and a motion for sanction, and by failing to appear at a pre-trial conference. The circuit court dismissed Ngong's case with prejudice. Moreover, Armstrong failed to communicate with Ngong concerning the status of her case and did not advise her of the discovery requests, the motion to compel, the circuit court's order compelling discovery, the motion for sanctions, or the pre-trial conference. Indeed, it was only months after the fact that Ngong discovered on her own that her case had been dismissed.

With respect to CJB, Armstrong violated MARPC 1.1 by failing to remit funds from clients' settlements to pay outstanding medical bills due to CJB and by failing to withhold portions of clients' settlements to pay to medical providers like CJB. For example, in the Anita Johnson matter, Armstrong prepared a settlement disbursement sheet that showed that he had withheld $2,500 for outstanding medical bills. Armstrong was aware that Johnson owed CJB $3,000, yet Armstrong failed to remit funds to CJB or any other medical provider for that matter and he failed to remit the $2,500 that he had withheld for outstanding medical bills back to Johnson. As another example, in the Keevon Jones matter, although Armstrong signed an authorization and assignment with CJB, agreeing to

be legally bound by Jones's assignment of settlement proceeds to CJB, when a settlement check was received, Armstrong failed to withhold any funds to pay CJB, and instead disbursed funds to Jones and himself.

In the Merriman matter, Armstrong similarly provided incompetent representation by failing to remit funds from Merriman's settlement to pay medical bills, although the settlement disbursement reflected that he had withheld $2,000 to pay outstanding medical bills. In the Whiting matter, Armstrong provided incompetent representation by mishandling client funds, as he failed to pay Whiting settlement proceeds owed to her and instead misappropriated those funds for himself.

In the Schaffer matter, Armstrong failed to cooperate or even pursue Schaffer's case before the MCCR, failing to submit a settlement demand or Schaffer's medical bills as requested and failing to respond to a request to set up an interview with Schaffer. Moreover, Armstrong failed to advise Schaffer of the MCCR's adverse decision, to provide her with a copy of the MCCR's decision, or to advise her that she had fifteen days to apply for reconsideration. As a result, Schaffer lost the opportunity to apply for reconsideration. Armstrong also failed to file a lawsuit on Schaffer's behalf, despite assuring Schaffer that he would do so, and he misrepresented to Schaffer the status of the lawsuit and misled her to believe that a lawsuit had been filed. And, Armstrong failed to meaningfully or adequately communicate with Schaffer about both the housing discrimination complaint with MCCR and the lawsuit that she wanted to pursue. Armstrong failed to pursue any substantive legal action on Schaffer's behalf in either forum.

In the Gunici matter, although Armstrong appeared on Gunici's behalf at the Master

Calendar hearing, he provided incompetent representation by failing to advise her of the Immigration Court's instructions or the March 21, 2019 deadline for filing an asylum application. Indeed, Armstrong did not advise Gunici or her husband about the deadline and did not respond to their repeated attempts to contact him for an update on Gunici's case. Ultimately, because Gunici was not advised of the deadline or the significance of the deadline, Gunici missed the deadline to file her asylum application and the Immigration Court issued an order of removal.

In the Cheatham matter, Armstrong failed to appear at multiple hearings, showed up unprepared at one proceeding (a status conference) that he attended, and failed to communicate with Cheatham in any way or provide any meaningful legal services to Cheatham. Similarly, in the Knox matter, Armstrong abandoned the representation after receiving funds from Knox, without providing any services of value to Knox, and he failed to communicate with Knox. And, in the McRae matter, Armstrong failed to appear at multiple proceedings, including the arraignment, failed to communicate with McRae or his mother, and failed to forward the client file to McRae's new counsel when requested.

Armstrong also violated MARPC 1.1 by failing to deposit and maintain client and third-party funds in his attorney trust account.

Armstrong violated MARPC 1.3 in the eight client matters at issue—in the Ngong, Whiting, Merriman, Schaffer, Gunici, Cheatham, Knox, and McRae matters—for the same

reasons he violated MARPC 1.1.[4]  By failing to take prompt action to advance his clients'

causes, failing to disburse funds to clients, and repeatedly failing to adequately

communicate with and respond to his clients, Armstrong failed to act with the reasonable

diligence and promptness required in representing a client.  Indeed, we note that in several

instances, Armstrong took no meaningful steps whatsoever to advance his clients' causes.

**MARPC 1.2(a) (Scope of Representation)**

MARPC 1.2(a) provides, in relevant part, that "an attorney shall abide by a client's

decisions concerning the objectives of the representation and, when appropriate, shall

consult with the client as to the means by which they are to be pursued."  For an attorney

to satisfy a client's objectives, a client must "be able to make informed decisions[,]" which

means that the "attorney must give the client honest updates regarding the status of his or

her case."  Ambe, 466 Md. at 290, 218 A.3d at 768 (cleaned up).

Clear and convincing evidence supports the hearing judge's conclusion that

Armstrong violated MARPC 1.2(a) in the Ngong, Whiting, Merriman, Schaffer, Cheatham,

Knox, and McRae matters and with respect to CJB.  Indeed, as discussed above concerning

Armstrong's violation of MARPC 1.1 and 1.3, Armstrong routinely failed to consult with

his clients or to provide honest updates to his clients about the status of their cases and to

individuals he represented who sought medical treatment at CJB.  For example, in the

Ngong matter, Armstrong failed to provide crucial updates to Ngong about the status of

---

[4]The hearing judge concluded that Armstrong violated MARPC 1.3 with respect to CJB; however, Bar Counsel did not charge Armstrong with violating MARPC 1.3 with respect to CJB.

- 39 -

her case that would have permitted her to make informed decisions about the case. Armstrong did not tell Ngong that discovery requests had been filed, that he did not prepare discovery responses, that a motion to compel had been filed, and that he did not respond to the motion to compel. Armstrong also did not tell Ngong that the circuit court granted the motion to compel and ordered discovery responses to be submitted within five days, that he still did not prepare or submit discovery responses, that a motion for sanctions had been filed, that he did not respond to the motion for sanctions, that a pre-trial conference was scheduled, that he did not appear at the pre-trial conference, and that the circuit court dismissed Ngong's case with prejudice.

With respect to CJB, Armstrong failed to abide by his clients' decisions concerning the objectives of the representation—to pay the clients' outstanding medical bills owed to CJB—in multiple instances. As one example, in the Keevon Jones matter, although both Jones and Armstrong signed an authorization and assignment with CJB, agreeing that a portion of Jones's settlement proceeds would be used to pay Jones's outstanding medical bills owed to CJB, Armstrong completely disregarded the authorization and assignment and failed to withhold any funds from the settlement proceeds to pay CJB or to otherwise pay any funds to CJB on Jones's behalf.

In the Whiting matter, Armstrong failed to pay Whiting any of her settlement proceeds despite saying that he would do so. In the Merriman matter, despite knowing that Merriman had outstanding medical bills with Maryland Healthcare Clinics, and despite ostensibly withholding funds from Merriman's settlement proceeds for her medical bills, Armstrong did not pay any of Merriman's medical providers, including Maryland

- 40 -

Healthcare Clinics.

In the Schaffer matter, Armstrong failed to pursue the objectives of the representation—to pursue the housing discrimination complaint and to file a lawsuit. Indeed, Armstrong did not respond to or otherwise cooperate with MCCR's investigation of Schaffer's housing discrimination complaint, and he failed to advise Schaffer that MCCR issued an adverse decision and that there was a fifteen-day deadline to request reconsideration. As a result, Schaffer missed the chance to apply for reconsideration. And, despite his assurances to the contrary, Armstrong never filed a lawsuit on Schaffer's behalf.

In the Cheatham matter, although Armstrong appeared for a status conference, he was unprepared and he had failed to meet or communicate with Cheatham in any way, meaning that Armstrong could not possibly have known the objectives of the representation and that Cheatham would not have been able to make informed decisions about the representation. Similarly, in the McRae matter, Armstrong showed up unprepared for a preliminary hearing and did not meet or communicate with McRae at all. Thereafter, Armstrong failed to appear at several proceedings, including the arraignment. Clearly, Armstrong could not abide by the objectives of the representation without communicating with McRae and attending scheduled proceedings in the criminal case. And, in the Knox matter, although Armstrong knew that Knox had retained him to contact Knox's probation officer to attempt to persuade her to not report a violation of probation, Armstrong abandoned the representation after receiving funds, failed to communicate with Knox, and failed to contact the probation officer to discuss Knox's probation.

## MARPC 1.4 (Communication)

MARPC 1.4 provides:

(a) An attorney shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 19-301.0 (f) (1.0), is required by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Attorneys' Rules of Professional Conduct or other law.

(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

An attorney violates MARPC 1.4 where the attorney fails to communicate with a client and keep the client informed of the status of the client's legal matter, "especially when [the] client[] attempt[s] repeatedly to speak with" the attorney. Attorney Grievance Comm'n v. Thomas, 440 Md. 523, 553, 103 A.3d 629, 647 (2014) (citation omitted).

Clear and convincing evidence supports the hearing judge's conclusion that Armstrong violated MARPC 1.4(a) and (b) in the Ngong, Whiting, Merriman, Schaffer, Gunici, Cheatham, Knox, and McRae matters.[5] The hearing judge's findings of fact are replete with examples of instances in which Armstrong repeatedly failed to adequately

---

[5]Although Bar Counsel charged Armstrong with violating MARPC 1.4 with respect to CJB, the hearing judge did not reach a conclusion as to whether Armstrong violated MARPC 1.4 with respect to CJB.

communicate with, or promptly respond to reasonable requests for information from, his clients, and to keep his clients reasonably informed about the status of their matters. Armstrong also failed to provide his clients with updates on developments in their cases, thereby preventing the clients from making informed decisions about the representation, as discussed in detail above concerning Armstrong's violation of MARPC 1.2(a).

As one example illustrative of Armstrong's violation of MARPC 1.4, in the Merriman matter, after Merriman received a bill from Maryland Healthcare Clinics, she attempted to contact Armstrong by telephone several times, but he failed to respond. Because Armstrong was not responding to Merriman, Merriman eventually resorted to finding and contacting Armstrong's wife through Facebook. After Merriman received a second letter from Maryland Healthcare Clinics about her outstanding bill, Merriman again attempted to get in touch with Armstrong by telephone multiple times, to no avail. Merriman again resorted to contacting Armstrong's wife, exchanging text messages with her over the course of nine days. In one of the text messages, Merriman confirmed Armstrong's phone number and e-mail address, and she then sent an e-mail to Armstrong about the outstanding medical bill. Merriman also sent follow-up e-mails. Armstrong ultimately did not respond to any of the e-mails. In essence, after receiving the settlement proceeds, Armstrong stopped communicating altogether with Merriman.

### MARPC 1.5(a) (Unreasonable Fees)

MARPC 1.5(a) provides:

An attorney shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the attorney or attorneys performing the services; and

(8) whether the fee is fixed or contingent.

"An advance fee given in anticipation of legal service that is reasonable at the time of the receipt can become unreasonable if the attorney does not perform the services expected." Attorney Grievance Comm'n v. Lang, 461 Md. 1, 51, 191 A.3d 474, 504 (2018) (cleaned up). Stated otherwise, "[a] fee arrangement is unreasonable if the attorney fails to perform any meaningful work on behalf of the client in exchange for the fee." Smith, 457 Md. at 218, 177 A.3d at 675 (cleaned up).

The hearing judge's conclusion that Armstrong violated MARPC 1.5(a) in the Ngong, Cheatham, Knox, and McRae matters is supported by clear and convincing evidence. In each of the four client matters, Armstrong collected fees at the outset of the representation and then failed to perform meaningful legal services, thereby rendering the

fees unreasonable. For example, in the Ngong matter, after being retained and accepting $1,000 in fees, although Armstrong sent a letter to Jerry's and Lease-It and filed a complaint on Ngong's behalf, thereafter, Armstrong provided no meaningful legal services to Ngong and effectively abandoned the representation, including failing to respond to discovery and failing to appear at a pre-trial conference, thereby resulting in Ngong's case being dismissed with prejudice.

In the Cheatham matter, after being paid $1,500 by Cheatham's relatives, although Armstrong entered his appearance on Cheatham's behalf and filed pretrial motions, Armstrong thereafter failed to provide meaningful legal services, including failing to appear at several scheduled proceedings, appearing unprepared at a status conference, and failing to communicate in any manner with Cheatham. And, although Armstrong told Cheatham that he would refund all fees that he had been paid, Armstrong never refunded any of the fees. In the Knox matter, after Knox paid Armstrong $250 in fees, Armstrong abandoned the representation and did not communicate with Knox or contact Knox's probation officer. Armstrong also never refunded any of the fees to Knox. Likewise, in the McRae matter, after receiving $2,800 in fees, although Armstrong entered his appearance on McRae's behalf and filed two motions, Armstrong otherwise failed to render meaningful legal services, including appearing at a preliminary hearing unprepared, failing to communicate with McRae at all, and failing to appear at multiple proceedings, including the arraignment. And, Armstrong failed to refund any of the fees that he had been paid.

**MARPC 1.5(c) (Contingent Fees)**

MARPC 1.5(c) provides:

- 45 -

A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by section (d) of this Rule or other law. A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the attorney in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be responsible whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the attorney shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of its determination.

An attorney violates MARPC 1.5(c) where the attorney fails "to memorialize [a contingent] fee agreement in a writing signed by the client." Attorney Grievance Comm'n v. Steinberg, 395 Md. 337, 364, 910 A.2d 429, 445 (2006).

Clear and convincing evidence supports the hearing judge's conclusion that Armstrong violated MARPC 1.5(c) in the Merriman matter and with respect to the matters in which clients were provided treatment by CJB.[6] In the Merriman matter, Armstrong entered into a contingency fee agreement, but he failed to memorialize that agreement in a

---

[6]Although the hearing judge did not make an explicit finding that Armstrong entered into contingent fee agreements in his representation of clients who sought medical treatment at CJB, the hearing judge consistently found that those clients retained Armstrong to pursue damages in connection with accidents and did not make a finding that any client paid a retainer fee in exchange for Armstrong's representation. It can be inferred that Armstrong entered into contingency fee arrangements in connection with his commitment to pursue damages on behalf of the clients who sought medical treatment at CJB. In addition, in some instances, the letters Armstrong sent to clients enclosing settlement proceeds described the payment to the client as a surplus after attorney's fees and other costs were deducted from the insurance company's payment. This confirms that the attorney's fees were deducted from, *i.e.*, contingent on, settlement proceeds. We are satisfied that the hearing judge's conclusion that Armstrong violated MARPC 1.5(c) with respect to clients who sought treatment at CJB is supported by clear and convincing evidence.

writing signed by Merriman, in violation of MARPC 1.5(c). With respect to CJB, Armstrong failed to provide a settlement disbursement sheet in the Keith Roundtree matter, and he provided inaccurate settlement disbursement sheets in other matters, falsely claiming that funds were withheld to pay outstanding medical bills, although he did not remit any funds to CJB or any other medical provider.

## MARPC 1.15 (Safekeeping Property)

MARPC 1.15(a) provides:

An attorney shall hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property. Funds shall be kept in a separate account maintained pursuant to Title 19, Chapter 400 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the attorney and shall be preserved for a period of at least five years after the date the record was created.

MARPC "1.15(a) requires an attorney to maintain client funds in a trust account, separate from the attorney's personal and operating funds." Attorney Grievance Comm'n v. Mungin, 439 Md. 290, 307, 96 A.3d 122, 131-32 (2014) (cleaned up).

MARPC 1.15(c) provides:

Unless the client gives informed consent, confirmed in writing, to a different arrangement, an attorney shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the attorney's own benefit only as fees are earned or expenses incurred.

An attorney violates MARPC 1.15(c) where the attorney "does not deposit trust funds into an attorney trust account and does not obtain the client's informed consent to do otherwise." Attorney Grievance Comm'n v. Hamilton, 444 Md. 163, 189, 118 A.3d 958,

973 (2015) (cleaned up).

> And, MARPC 1.15(d) provides:

> Upon receiving funds or other property in which a client or third person has an interest, an attorney shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, an attorney shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

An attorney violates MARPC "1.15(d) by failing to promptly deliver settlement funds to a client and to medical providers, and by failing to pay a client's debt from settlement funds." Mungin, 439 Md. at 308, 96 A.3d at 132 (cleaned up).

The hearing judge was correct in concluding that Armstrong violated MARPC 1.15(a), (c), and (d) with respect to CJB and in the Whiting, Merriman, Cheatham, Knox, and McRae matters. The hearing judge's findings of facts demonstrate that Armstrong failed to maintain client funds in an attorney trust account, in violation of MARPC 1.15(a), that he deposited trust funds into an account other than an attorney trust account without his clients' informed consent to do so, in violation of MARPC 1.15(c), and that he failed to promptly deliver settlement proceeds to clients and medical providers and to pay clients' debts from those proceeds, in violation of MARPC 1.15(d).

With respect to CJB, Armstrong failed to notify CJB that he had received settlement proceeds for various clients and then failed to disburse funds from the settlement proceeds to pay outstanding medical bills owed to CJB and other medical providers. In some client matters, Armstrong seemingly withheld funds from settlement proceeds to pay clients' outstanding medical bills, but then failed to remit payment to CJB or any other medical

- 48 -

provider on behalf of the clients. Armstrong then failed to remit the withheld funds to the clients, thereby intentionally misappropriating those funds for his own use and benefit. In other client matters, despite executed assignments with CJB in some instances, Armstrong failed to withhold any funds from settlements to pay client's outstanding medical bills owed to CJB and he failed to remit any payment to CJB for those outstanding medical bills, or he withheld funds for medical bills yet still failed to pay any funds to CJB. And, in at least one of the client matters, Armstrong failed to deposit and maintain settlement proceeds in an attorney trust account, despite not having his client's informed consent to deposit those proceeds in an account other than an attorney trust account.

In the Whiting matter, Armstrong apparently misappropriated the entirety of the settlement proceeds, $10,000, for his own use and benefit, as he did not deposit any of the proceeds into his attorney trust account and he failed to provide Whiting or anyone else an accounting concerning the disposition of the settlement proceeds. In the Merriman matter, Armstrong did not pay any of Merriman's medical providers with funds from her settlement proceeds and he failed to return funds he had withheld for that purpose ($2,000, according to the settlement disbursement sheet) to Merriman. At bottom, Armstrong intentionally misappropriated those withheld funds. In the Cheatham and Knox matters, Armstrong failed to deposit unearned fees received from the client or on the client's behalf into his attorney trust account, and he failed to obtain their informed consent, confirmed in writing, to deposit that money into an account other than an attorney trust account. And, in the McRae matter, Armstrong failed to deposit unearned fees received on McRae's behalf into his attorney trust account, and instead deposited the fees into his operating

- 49 -

account. Armstrong did not have McRae's or his mother's informed consent, confirmed in writing, to deposit the fees in an account other than an attorney trust account.

### MARPC 1.16(d) (Terminating Representation)

MARPC 1.16(d) provides:

Upon termination of representation, an attorney shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of another attorney, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The attorney may retain papers relating to the client to the extent permitted by other law.

An attorney violates MARPC 1.16(d) where the "attorney fails to return unearned fees and papers." Ambe, 466 Md. at 294, 218 A.3d at 770 (citations omitted).

Clear and convincing evidence supports the hearing judge's conclusion that Armstrong violated MARPC 1.16(d) in the Ngong, Whiting, Merriman, Schaffer, Cheatham, Knox, and McRae matters and with respect to CJB. In the Ngong and Knox matters, Armstrong essentially abandoned his representation of Ngong and Knox, effectively terminating his representation without reasonable notice to either Ngong or Knox, in violation of MARPC 1.16(d). Furthermore, in the Cheatham, Knox, and McRae matters, Armstrong failed to return unearned fees.[7] Notably, Armstrong had told Cheatham that he would refund all fees he had been paid, but he failed to do so. In the Schaffer matter, Schaffer requested a copy of her case file, but Armstrong failed to provide it to her.

---

[7]We also note that, in the Ngong matter, Armstrong agreed to compensate Ngong $12,500 for his failure to prosecute her case. Armstrong, however, paid only $4,583 to Ngong.

Similarly, in the McRae matter, Armstrong failed to provide a copy of McRae's case file to his new counsel, despite a written request to do so. Additionally, Armstrong violated MARPC 1.16(d) in the Whiting and Merriman matters and with respect to CJB when he failed to take steps reasonably necessary to protect his clients' interest by failing to remit settlement proceeds to them that they were owed and failing to pay medical providers on behalf of his client.

### MARPC 3.4(d) (Fairness to Opposing Party and Attorney)

MARPC 3.4(d) provides that "[a]n attorney shall not[] in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party." (Paragraph break omitted).

Clear and convincing evidence supports the hearing judge's conclusion that Armstrong violated MARPC 3.4(d) in the Ngong matter, as he made no effort whatsoever, let alone a reasonably diligent effort, to comply with legally proper discovery requests from the opposing parties in the case. The hearing judge's findings of fact amply demonstrate that Armstrong failed to take any steps to respond to discovery requests that had been propounded by Jerry's and Lease-It. Armstrong failed to notify Ngong of the discovery requests. He failed to prepare or submit discovery responses on Ngong's behalf. Jerry's and Lease-It ended up filing a motion to compel and a motion for sanctions due to the lack of response. Armstrong failed to notify Ngong of the motions and he failed to file responses. After the circuit court granted the motion to compel, ordering Ngong to respond within five days, Armstrong still continued to do nothing at all, neither informing Ngong of the order nor preparing or submitting discovery responses. Jerry's and Lease-It filed a

motion for sanctions due to the continued lack of response. Armstrong failed to notify Ngong of the motion and he failed to file a response. Armstrong then failed to advise Ngong of a scheduled pre-trial conference and neither he nor Ngong attended. As a result of the failure to response to discovery and failure to appear at the pre-trial conference, the circuit court ultimately granted the motion for sanction and dismissed Ngong's case with prejudice. In short, Armstrong's failure to respond to discovery requests on Ngong's behalf, in violation of MARPC 3.4(d), coupled with his failure to appear at the pre-trial conference, resulted in his client's case being dismissed with prejudice.

## MARPC 4.1(a)(1) (False Statement to Third Person)

MARPC 4.1(a)(1) provides: "In the course of representing a client an attorney shall not knowingly[] make a false statement of material fact or law to a third person[.]"

The hearing judge was correct in concluding that Armstrong violated MARPC 4.1(a)(1) in the Schaffer matter.[8] In the Attorney Questionnaire section of Schaffer's loan application, Armstrong made a false statement of material fact to Global Financial by misrepresenting that the value of Schaffer's case was $80,000 and that the case would be settled within six months. At the time that Armstrong completed the Attorney Questionnaire section, however, he had failed to obtain Schaffer's medical records, submit a settlement demand to MCCR, or even file a lawsuit on her behalf. In other words, he had

---

[8]Without specifying a subsection, the hearing judge concluded that Armstrong violated MARPC 4.1(a) in the Schaffer matter. Bar Counsel specifically charged Armstrong with violating, and the hearing judge quoted only, MARPC 4.1(a)(1). It is clear that the hearing judge concluded that Armstrong violated MARPC 4.1(a)(1) in the Schaffer matter.

no knowledge of the value of Schaffer's case or whether her case—either the housing discrimination complaint or the lawsuit, which he had not even filed—would be settled within six months. Rather, as the hearing judge stated, Armstrong "had good reason to believe that his protracted negligence of the matter may have impeded the MCCR proceeding, as he had by that time already ignored repeated MCCR requests for medical specials." Based on Armstrong's false statements on the Attorney Questionnaire, Schaffer obtained a loan for $5,000 from Global Financial and became liable for that loan.

**MARPC 8.1(b) (Failing to Respond to Lawful Demand for Information)**

MARPC 8.1(b) provides, in pertinent part:

> [A]n attorney[,] in connection with a disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from a[] disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6 (1.6).

(Paragraph break omitted). MARPC 8.1(b) "requires a lawyer to timely respond to lawful requests for information from Bar Counsel" and "to answer timely requests from the Attorney Grievance Commission regarding complaints in potential disciplinary matters." Attorney Grievance Comm'n v. Butler, 441 Md. 352, 359, 107 A.3d 1220, 1224-25 (2015) (cleaned up).

The hearing judge was correct in concluding that Armstrong violated MARPC 8.1(b) in all eight client matters and with respect to CJB. Armstrong repeatedly failed to timely respond to lawful requests for information from Bar Counsel and requests for responses to the nine complaints filed against him. As the hearing judge observed, between May 2018 and July 2019, Bar Counsel sent numerous requests for responses and

information to Armstrong—six letters requesting a response to CJB's complaint alone—concerning the nine complaints that had been filed against him. Despite receiving the requests, with the exception of an untimely response in the Ngong matter,[9] Armstrong failed to respond to the complaints filed against him.

**MARPC 8.4(b) (Criminal Act)**

"It is professional misconduct for an attorney to . . . commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney in other respects[.]" MARPC 8.4(b). "It is well established that a conviction is not required to find a violation of M[A]RPC 8.4(b)." Attorney Grievance Comm'n v. Gracey, 448 Md. 1, 25, 136 A.3d 798, 813 (2016) (cleaned up). Indeed, "[a] court must only find clear and convincing evidence of conduct that would violate a criminal statute[.]" Hamilton, 444 Md. at 194, 118 A.3d at 975 (cleaned up). And, "[t]he crux of the 8.4(b) analysis[] is whether an attorney's criminal act reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Gracey, 448 Md. at 25, 136 A.3d at 813 (cleaned up). This Court has concluded that an attorney violated MARPC 8.4(b), among other provisions of the MARPC, where the attorney "blatantly misappropriated client funds[.]" Attorney Grievance Comm'n v. Zimmerman, 428 Md. 119, 143, 50 A.3d 1205, 1220 (2012).

Clear and convincing evidence supports the hearing judge's conclusion that

---

[9]The delay in responding to Bar Counsel in the Ngong matter alone (if there were no other cases in which Armstrong did not respond at all) might not have formed the basis of a violation of MARPC 8.1(b) if Armstrong had offered a plausible explanation for the delay.

Armstrong violated MARPC 8.4(b) in the Whiting and Merriman matters and with respect to CJB. It is plain that Armstrong knowingly and intentionally misappropriated settlement proceeds owed to his clients or medical providers, such as CJB, for his own use and benefit. Stated otherwise, despite not having been convicted of a crime, Armstrong nonetheless committed a criminal act that reflects adversely on his honesty, trustworthiness, and fitness as an attorney when he stole, or misappropriated, funds due to clients and third-party medical providers. See Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol., 2017 Supp.) ("CR") §§ 7-104 (General Theft Provisions), 7-113 (Embezzlement--Fraudulent Misappropriation by Fiduciaries); see also Attorney Grievance Comm'n v. Wills, 441 Md. 45, 57, 105 A.3d 479, 486 (2014). In the Whiting matter, Armstrong settled Whiting's case for $10,000 and advised Whiting, through her relative, that she was to receive $6,000. Armstrong never provided Whiting with any of the settlement proceedings, however, and instead intentionally misappropriated the funds belonging to Whiting for his own use and benefit. Similarly, in the Merriman matter, Armstrong provided Merriman with a settlement disbursement sheet that showed that he had withheld $2,000 from her settlement proceeds for medical bills. Armstrong, though, never remitted any funds to Merriman's medical providers and he did not return the $2,000 to Merriman. Rather, Armstrong intentionally misappropriated those funds for himself.

With respect to CJB, the hearing judge's findings of fact demonstrate that, in numerous instances, Armstrong intentionally misappropriated funds that were to be paid to CJB on behalf of his clients. As one example, in the Anita Johnson matter, the settlement disbursement sheet that Armstrong prepared showed that he had withheld $2,500 from the

settlement proceeds to pay Johnson's outstanding medical bills, but he never paid CJB or any other medical provider on Johnson's behalf and he failed to remit the funds to Johnson. Instead, Armstrong intentionally misappropriated the funds for himself. Johnson was also owed funds from other settlement proceeds that had been received, but Armstrong never disbursed those funds to Johnson and instead kept them for himself. As another example, in the Roundtree matter, Armstrong retained over $1,000 from the settlement proceeds received, but he failed to pay CJB any of the funds on Roundtree's behalf, despite knowing that Roundtree owed CJB $3,000. Instead, yet again, Armstrong misappropriated the funds for his own use and benefit.

### MARPC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation)

"It is professional misconduct for an attorney to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" MARPC 8.4(c). For example, an attorney violates MARPC 8.4(c) "by retaining unearned fees without intending to earn them." Attorney Grievance Comm'n v. Haley, 443 Md. 657, 674, 118 A.3d 816, 826 (2015) (citation omitted). And, this Court has consistently held that "an attorney's intentional misappropriation of client funds violates M[A]RPC 8.4(c)." Hamilton, 444 Md. at 193, 118 A.3d at 975 (citations omitted).

Clear and convincing evidence supports the hearing judge's conclusion that Armstrong violated MARPC 8.4(c) in the Ngong, Whiting, Merriman, and Schaffer matters

and with respect to CJB.[10]  In the Ngong matter, Armstrong intentionally concealed from Ngong the fact that the circuit court had dismissed her case with prejudice due to his failure to respond to discovery requests and to appear at a pre-trial conference.  Moreover, after Armstrong's deceit came to light, Armstrong lied to Ngong, claiming that he would file a new lawsuit on her behalf against different defendants, but he never did so.

With respect to CJB, Armstrong intentionally misrepresented to CJB that he had inadvertently paid a different medical provider, rather than CJB, for treatment rendered to Roundtree and Anita Johnson.  Armstrong fraudulently altered two cancelled checks that he then submitted to CJB to support his lie about why CJB's outstanding bills for Roundtree and Johnson had not been paid.  Indeed, Armstrong altered the checks to delete the information that originally appeared on the memo lines to make it appear as though the checks concerned Johnson and Roundtree when, in reality, the authentic checks included notations on the memo lines indicating that the checks concerned an entirely different client.  And, as the hearing judge noted, "Armstrong continued to press th[e] false contention to" the hearing judge as to why CJB had not been paid in the Johnson and Roundtree matters "in his e[-]mail regarding mitigation."  Moreover, Armstrong violated MARPC 8.4(c) by misappropriating settlement proceeds that were owed to CJB, as discussed above.

Similarly, in the Whiting and Merriman matters, Armstrong misappropriated

_____

[10]Bar Counsel also charged Armstrong with violating MARPC 8.4(c) in the Cheatham, Knox, and McRae matters, but the hearing judge did not reach a conclusion as to whether Armstrong violated MARPC 8.4(c) in connection with those matters.

- 57 -

settlement proceeds owed to Whiting and Merriman.

In the Schaffer matter, Armstrong deliberately lied to Schaffer, telling her that he had filed a personal injury action on her behalf, when he had not done so. Armstrong doubled down on that lie over the next several weeks when he continued to intentionally mislead Schaffer into believing that he had filed a lawsuit. Armstrong never filed a lawsuit on Schaffer's behalf and Schaffer discovered that fact herself by contacting the court.

**MARPC 8.4(d) (Conduct that is Prejudicial to the Administration of Justice)**

"It is professional misconduct for an attorney to . . . engage in conduct that is prejudicial to the administration of justice[.]" MARPC 8.4(d). "Generally, a lawyer violates M[A]RPC 8.4(d) where the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public." Attorney Grievance Comm'n v. Slate, 457 Md. 610, 645, 180 A.3d 134, 155 (2018) (cleaned up). As an example, an attorney violates MARPC 8.4(d) "by not obtaining a client's consent to deposit fees into an account other than an attorney trust account." Haley, 443 Md. at 675, 118 A.3d at 826 (citation omitted).

Clear and convincing evidence supports the hearing judge's conclusion that Armstrong violated MARPC 8.4(d) in all eight client matters and with respect to CJB and his attorney trust account. In this case, undisputedly, Armstrong engaged in conduct that would negatively impact the perception of the legal profession by a reasonable member of the public. Among many other things, Armstrong repeatedly neglected client matters and essentially abandoned his representation of Ngong, Whiting, Schaffer, Gunici, Cheatham, Knox, and McRae. Armstrong demonstrated a noticeable indifference to the needs and

- 58 -

objectives of his clients by failing to communicate with them in a meaningful way, failing to respond to requests for information and status updates, and failing to take meaningful action on behalf of his clients in many instances. Armstrong's failure to respond to discovery requests and to attend proceedings also showed his lack of regard for the court and opposing parties. In some instances, Armstrong deposited fees into an account other than his attorney trust account, despite not obtaining his clients' informed consent to do so. Moreover, as discussed above, Armstrong misappropriated settlement proceeds in the Whiting and Merriman matters and with respect to CJB. And, Armstrong intentionally concealed and misrepresented information to his clients. Armstrong also violated MARPC 8.4(d) with respect to CJB when he visited the CJB office and twice threatened to "blow up" the building before he would let CJB "take [his] license." Armstrong's threats led CJB's employees to report the incidents to the Baltimore Police Department and a police report was prepared. And, Armstrong failed to respond to numerous requests for information from Bar Counsel about the complaints filed against him. There is simply no doubt that Armstrong's actions, considered separately or together, were prejudicial to the administration of justice and violated MARPC 8.4(d).

### MARPC 8.4(a) (Violating the MARPC)

"It is professional misconduct for a lawyer to[] violate . . . the" MARPC. MARPC 8.4(a). Clear and convincing evidence supports the hearing judge's conclusion that Armstrong violated MARPC 8.4(a). As discussed above, Armstrong violated MARPC 1.1, 1.2(a), 1.3, 1.4, 1.5(a), 1.5(c), 1.15(a), (c), and (d), 1.16(d), 3.4(d), 4.1(a), 8.1(b), 8.4(b), 8.4(c), and 8.4(d).

**BOP § 10-306 (Trust Money Restrictions)**

"A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer." BOP § 10-306.

Clear and convincing evidence supports the hearing judge's conclusion that Armstrong violated BOP § 10-306 with respect to CJB by intentionally misappropriating funds from settlement proceeds that were owed to CJB and other medical providers, as discussed in detail above.[11] For example, in the Amiya matter, the settlement disbursement sheet that Armstrong prepared stated that Amiya was owed $1,333, but Armstrong issued a disbursement check to Amiya for only $100. Armstrong apparently intentionally withheld $1,233 from the settlement proceeds owed to Amiya for himself and never disbursed the funds to Amiya, her guardian, or into a minor's trust. In short, Armstrong used trust money for purposes other than the purpose for which the trust money was entrusted to him.

## B. Sanction

Bar Counsel recommended that we disbar Armstrong. Armstrong did not file a recommendation for sanction.

In Slate, 457 Md. at 646-47, 180 A.3d at 155-56, this Court stated:

> This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession. This Court accomplishes these goals by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.

---

[11]Although Bar Counsel also charged Armstrong with violating BOP § 10-306 in the Whiting and Merriman matters, the hearing judge did not reach a conclusion as to whether Armstrong violated BOP § 10-306 in connection with those matters.

In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the M[A]RPC that the lawyer violated; (2) the lawyer's mental state; (3) the injury that the lawyer's misconduct caused or could have caused; and (4) aggravating factors and/or mitigating factors.

Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the M[A]RPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the M[A]RPC; and (14) unlikelihood of repetition of the misconduct.

(Cleaned up).

Recently, in Attorney Grievance Comm'n v. Bah, 468 Md. 179, 206, 217, 226 A.3d 912, 928, 934 (2020), this Court disbarred an attorney who violated MARPC 1.1, 1.2(a), 1.3, 1.4, 1.15(a) and (c), 1.16(d), 3.2 (Expediting Litigation), 5.5(a) (Unauthorized Practice

- 61 -

of Law), 8.1(b), 8.4(c), 8.4(d), and 8.4(a), and BOP §§ 10-304(a) and 10-306. The attorney

> abandoned the representation of seven clients. In those matters, [the attorney] collected fees and then abandoned the client before completing the objective of the representation. In ten client matters, [the attorney] failed to respond to his clients' requests for information and even sent a mass email directing his clients not to contact him regarding the status of their matters. [The attorney] failed to deposit and maintain client funds in an attorney trust account until earned in several instances, and [the attorney] failed to provide his clients with refunds of unearned fees. Furthermore, [the attorney] engaged in deceitful and dishonest conduct by knowingly and intentionally misrepresenting that he needed additional funds for "filing fees" and subsequently misappropriating one of those payments.
>
> In addition, [the attorney] failed to provide responses to the majority of Bar Counsel's numerous requests for information and documentation. When [the attorney] did provide a response, his responses were untimely and incomplete. [The attorney] failed to participate in the attorney grievance proceeding by failing to: file an answer to the Petition for Disciplinary or Remedial Action; respond to Bar Counsel's discovery requests; and appear at the September 24, 2019, hearing or the hearing before this Court.

Id. at 217-18, 226 A.3d at 934-35. This Court noted several aggravating factors, including a dishonest and selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the attorney discipline proceeding, and a refusal to acknowledge the wrongful nature of the misconduct, and we observed that the attorney did not present any mitigating factors and thus had not proven any mitigation. See id. at 216-17, 226 A.3d at 934. This Court explained that "[t]he multiple infractions involving multiple client matters warrant[ed] disbarment[,]" and that "the misappropriation of funds by an attorney is an act infected with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." Id. at 218, 226 A.3d at 935 (cleaned up).

Here, among other things, Armstrong violated MARPC 1.1 and 1.3 by, in the Ngong

matter, failing to take necessary, fundamental steps in the case, failing to respond to discovery requests, failing to file a response to motions to compel and for sanctions, failing to appear at a pre-trial conference, and failing to communicate with Ngong concerning the status of her case. Armstrong violated MARPC 1.1 with respect to CJB by failing to remit funds from clients' settlements to pay outstanding medical bills due to CJB and by failing to withhold portions of clients' settlements to pay medical providers, including CJB. Armstrong violated MARPC 1.1 and 1.3 in the Merriman and Whiting matters by mishandling client funds and failing to pay settlement proceeds to either medical providers or his client. Armstrong violated MARPC 1.1 and 1.3 in the Schaffer matter by failing to cooperate or pursue Schaffer's complaint before the MCCR, failing to advise Schaffer of the MCCR's adverse decision or the timeframe within which to apply for reconsideration, failing to file a lawsuit on Schaffer's behalf, and failing to meaningfully communicate with Schaffer about her case.

Armstrong violated MARPC 1.1 and 1.3 in the Gunici matter by failing to advise Gunici of the Immigration Court's instructions or of the deadline for filing an asylum application and by failing to respond to her repeated attempts to contact him for a status update. Armstrong violated MARPC 1.1 and 1.3 in the Cheatham matter by failing to appear at multiple proceedings, showing up unprepared at a status conference, and failing to communicate in any way with Cheatham. Armstrong violated MARPC 1.1 and 1.3 in the Knox matter by abandoning the representation after being paid and failing to communicate with Knox. Armstrong violated MARPC 1.1 and 1.3 in the McRae matter by failing to appear at multiple proceedings, including the arraignment, failing to

- 63 -

communicate with McRae or his mother, and failing to forward the client file to McRae's new counsel. Armstrong violated MARPC 1.1 by failing to deposit and maintain client and third-party funds in an attorney trust account.

Armstrong violated MARPC 1.2(a) by routinely failing to consult with his clients or to provide status updates to his clients and those he represented who had sought medical treatment at CJB. Armstrong violated MARPC 1.4(a) and (b) by repeatedly failing to adequately communicate with, or promptly respond to reasonable requests for information from, his clients, by failing to keep his clients reasonably informed about the status of their matters, and by failing to provide his clients with updates on developments in their cases, thereby preventing the clients from making informed decisions about the representation. Armstrong violated MARPC 1.5(a) by charging Ngong, Cheatham, Knox, and McRae fees and then providing essentially little or no legal services. Armstrong violated MARPC 1.5(c) by entering into a contingency fee agreement with Merriman but failing to memorialize the agreement in a writing signed by Merriman. Armstrong violated MARPC 1.5(c) with respect to CJB by failing to provide a settlement disbursement sheet in one matter and providing inaccurate settlement disbursement sheets in other matters.

Armstrong violated MARPC 1.15(a) by failing to maintain client funds in an attorney trust account. Armstrong violated MARPC 1.15(c) by depositing trust funds into an account other than an attorney trust account without his clients' informed consent to do so. Armstrong also violated MARPC 1.15(d) by failing to promptly deliver—or, indeed, to deliver at all—settlement proceeds to clients and medical providers and to pay clients' debts from those proceeds. Armstrong violated MARPC 1.16(d) in the Ngong and Knox

matters by essentially abandoning the representation, effectively terminating his representation without reasonable notice. Armstrong violated MARPC 1.16(d) by failing to return unearned fees to Cheatham, Knox, and McRae, and by failing to provide copies of Schaffer's and McRae's files. Armstrong also violated MARPC 1.16(d) in the Whiting and Merriman matters and with respect to CJB by failing to take steps reasonably necessary to protect his clients' interest, including remitting settlement proceeds to the clients that they were owed and paying medical providers.

Armstrong violated MARPC 3.4(d) in the Ngong matter by failing to make any effort whatsoever to comply with discovery requests propounded by the opposing parties, to respond to the motion to compel, to comply with the circuit court's order compelling discovery, or to respond to the motion for sanctions. Armstrong violated MARPC 8.1(b) by repeatedly failing to provide responses to the nine complaints against him and by providing a response to Ngong's complaint that was almost two months later than the date that he had stated he would respond by. Indeed, other than the untimely response to Ngong's complaint, Armstrong failed to respond to the complaints filed against him. Armstrong violated MARPC 8.4(d) by engaging in misconduct that would negatively impact the perception of the legal profession of a reasonable member of the public.

And if all of the above were not enough to warrant disbarment, significantly, Armstrong violated MARPC 4.1(a)(1) in the Schaffer matter by making a false statement of material fact to a third party when he misrepresented the value of Schaffer's case and the timeline for settlement of the case in the Attorney Questionnaire section of Schaffer's loan application with Global Financial. Armstrong violated MARPC 8.4(b) and 8.4(c) in

the Whiting and Merriman matters and with respect to CJB by knowingly and intentionally misappropriating settlement proceeds owed to his clients or medical providers, such as CJB, for his own use and benefit. Armstrong violated MARPC 8.4(c) in multiple other instances. Armstrong intentionally concealed from Ngong that the circuit court had dismissed her case with prejudice due to his failure to respond to discovery requests and to appear at a pre-trial conference. Armstrong later misrepresented to Ngong that he would file a new lawsuit on her behalf against different defendants, but he never did so. Armstrong intentionally misrepresented to CJB that he had inadvertently paid a different medical provider, instead of CJB, for treatment rendered to two clients. To support that misrepresentation, Armstrong fraudulently altered two cancelled checks. Armstrong purposefully lied to Schaffer that he had filed a personal injury action on her behalf, although he had not done so. And, Armstrong compounded that lie by intentionally misleading Schaffer into believing that he had filed the lawsuit. Additionally, Armstrong violated BOP § 10-306 by intentionally misappropriating funds from settlement proceeds that were owed to CJB.

Armstrong's misconduct ranged from gross negligence and essentially abandoning his representation of multiple clients to intentionally misappropriating client and third-parties funds and making misrepresentations to clients and third parties. Undoubtedly, Armstrong's misconduct harmed his clients who, among other things, were deprived of their funds and files, were charged unreasonable fees, and were lied to by Armstrong. For example, Armstrong's failure to respond to discovery and appear at a pre-trial conference resulted in the circuit court dismissing Ngong's case with prejudice, thereby depriving

Ngong of the ability to prosecute her case against Jerry's and Lease-It. Armstrong's mishandling and misappropriation of settlement proceeds resulted in CJB not being paid funds that it was due. Armstrong's failure to cooperate with the MCCR investigation in the Schaffer matter resulted in an adverse decision being issued, and Armstrong's failure to advise Schaffer of the adverse decision and the timeframe for requesting reconsideration caused Schaffer to lose the opportunity to request reconsideration. Moreover, Armstrong's false statement of material fact on Schaffer's loan application resulted in Schaffer obtaining and becoming liable for a $5,000 loan. Armstrong's failure to provide competent representation to Gunici and to adequately communicate with her resulted in Gunici missing the deadline to file an asylum application and in the Immigration Court ordering Gunici removed. Subsequent counsel's efforts to reopen the proceedings and to file an asylum application on Gunici's behalf were unavailing.

We determine the same eight aggravating factors as the hearing judge. First, Armstrong had a dishonest or selfish motive, as Armstrong misappropriated client and third-party funds for his own use and benefit, he made knowing and intentional misrepresentations to CJB as to his failure to pay his clients' outstanding medical bills to conceal his misappropriation, and he made knowing and intentional misrepresentations to Schaffer regarding her case status. Armstrong certainly engaged in a pattern of misconduct in eight client matters and in representing others who had been treated by CJB. Indeed, Armstrong repeatedly accepted funds, abandoned the representation of his clients, failed to communicate with his clients, and misappropriated funds belonging to his clients and third parties. Next, Armstrong committed multiple violations of the MARPC.

- 67 -

Armstrong engaged in bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with Bar Counsel's numerous requests for information. Also, Armstrong has refused to acknowledge the wrongful nature of his misconduct. According to the hearing judge, at the hearing, Armstrong failed to acknowledge the sheer scope of his misconduct or to accept any responsibility for his misconduct. Instead, apparently Armstrong continued to make excuses and even blamed his administrative assistant for sending payment to the wrong physical therapy center. Additionally, one of Armstrong's victims, Gunici, was a person seeking asylum, and thus was vulnerable. See Attorney Grievance Comm'n v. Allenbaugh, 450 Md. 250, 280, 148 A.3d 300, 318 (2016) (A client's "status as an immigrant renders him or her particularly vulnerable to [a lawyer]'s misconduct." (Citations omitted)). Further, Armstrong displayed an indifference to making restitution or rectifying the consequences of his misconduct, as he failed to refund unearned fees in the Knox, Cheatham, or McRae matters, he failed to honor his settlement agreement with Ngong, and he failed to return other client and third-party funds that he misappropriated. Finally, Armstrong engaged in illegal conduct; specifically, Armstrong intentionally misappropriated client and third-party funds for his own personal use and benefit.

Like the hearing judge, we determine two mitigating factors: the absence of prior attorney discipline and inexperience in the practice of law, as Armstrong became a member of the Bar of Maryland in 2014. Upon our review of the record, we do not discern any other mitigating factors. Like the hearing judge, we decline to find that Armstrong's misconduct was mitigated by either personal or emotional problems or a physical or mental

disability or impairment. To be sure, at the hearing, Armstrong advised that he was being treated by a psychiatrist for depression. And, after the hearing, Armstrong submitted to the hearing judge a letter from his treating psychiatrist, which indicated that he had been diagnosed with ADHD and Bipolar Disorder. The hearing judge found, however, that Armstrong's diagnosed conditions did not constitute a mitigating factor because there was no causal connection between the conditions and the misconduct. Armstrong did not file any exceptions to the hearing judge's findings of fact or conclusions of law, including the hearing judge's finding that his conditions did not constitute a mitigating factor. Accordingly, the hearing judge's finding on this point is established.

In any event, we agree with the hearing judge's finding, as it is consistent with case law "that only a debilitating mental or physical condition that is the root cause of misconduct and that disables the attorney from conforming conduct to the law and Maryland Rules can mitigate intentionally dishonest conduct." Attorney Grievance Comm'n v. Conwell, 462 Md. 437, 478, 200 A.3d 820, 844 (2019) (cleaned up). And, in Attorney Grievance Comm'n v. Miller, 467 Md. 176, 227-28, 223 A.3d 976, 1006 (2020), we explained the "root cause" standard, stating:

> when we are considering offenses relating to honesty, especially where there is any type of theft or intentional misappropriation of funds or other serious criminal conduct, there, since [*Attorney Grievance Comm' v.*] *Kenney*, [339 Md. 578, 664 A.2d 854 (1995),] needs to be almost conclusive, and essentially uncontroverted evidence that would support a hearing judge's finding not only that the attorney had a serious and debilitating mental condition, but that the mental condition, in a sustained fashion, affected the ability of the attorney in normal day to day activities, such that the attorney was unable to accomplish the least of those activities in a normal fashion. Unless that standard is met the impairment is not 'the root cause' of the misconduct.

(Quoting <u>Attorney Grievance Comm'n v. Vanderlinde</u>, 364 Md. 376, 418-19, 773 A.2d 463, 488 (2001)). Here, Armstrong did not present evidence that would support the hearing judge finding a mitigating factor based on his diagnoses.

In agreement with Bar Counsel, we concluded that the appropriate sanction for Armstrong's misconduct was disbarment.[12] Indeed, there is no doubt that the appropriate sanction for Armstrong's misconduct is disbarment. Armstrong engaged in copious instances of misconduct while representing eight clients, as well as numerous individuals who sought medical treatment at CJB. Armstrong violated MARPC 8.4(b) and 8.4(c) by, among other things, misappropriating funds, altering checks, and making misrepresentations to clients and third parties. "Absent compelling extenuating circumstances justifying a lesser sanction, intentional dishonest conduct by a lawyer will result in disbarment." <u>Attorney Grievance Comm'n v. Thomas</u>, 445 Md. 379, 402, 127 A.3d 562, 576 (2015) (cleaned up). We have held that "disbarment will inevitably follow any unmitigated misappropriation of . . . funds." <u>Attorney Grievance Comm'n v. Kobin</u>, 432 Md. 565, 585, 69 A.3d 1053, 1065 (2013) (cleaned up). Armstrong's only mitigating factors—inexperience in the practice of law and the absence of prior attorney discipline—

---

[12]Here, as in <u>Bah</u>, 468 Md. at 218, 207-16, 226 A.3d at 935, 928-34, disbarment was the appropriate sanction for "multiple infractions involving multiple client matters[,]" including failing to provide competent and diligent representation, failing to adequately communicate with clients, misappropriating clients' funds for the attorney's personal use and benefit, failing to deposit and maintain fees in an attorney trust account until earned, essentially terminating the representations of clients without giving notice, knowingly and intentionally failing to respond to Bar Counsel's numerous requests for information, and engaging in conduct that brings the legal profession into disrepute, especially where the misconduct is aggravated by multiple factors.

come nowhere near constituting compelling extenuating circumstances justifying a lesser sanction than disbarment. Additionally, there are numerous aggravating factors, including illegal conduct, a dishonest or selfish motive, a pattern of misconduct, and a refusal to acknowledge the wrongful nature of the conduct. Simply put, given the numerous instances and wide range of misconduct throughout the representation of eight clients, as well as during the representation of various other clients with respect to CJB, and the injury to multiple clients, disbarment was necessary to protect the public and, indeed, the only appropriate sanction.

For the above reasons, on November 20, 2020, by *per curiam* order, we disbarred Armstrong and awarded costs against him.